**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| AGILON ENERGY HOLDINGS II, LLC, *et al.* | § § | Case No. 21-32156 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING SENIOR SECURED POSTPETITION FINANCING PURSUANT TO
11 U.S.C. § 364, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT
TO 11 U.S.C. § 363, (III) GRANTING ADEQUATE PROTECTION PURSUANT
TO 11 U.S.C. §§ 361, 363, AND 364, AND (IV) GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 15, 2021 AT 10:00 AM (CENTRAL TIME) IN COURTROOM 404, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AUDIO/VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**
>
> **YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES & SCHEDULES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT "AGILON ENERGY HOLDINGS II, LLC," COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

---

[1] The debtors and debtors in possession these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Agilon Energy Holdings II, LLC (3389), Case No. 21-32156; Victoria Port Power LLC (4894), Case No. 21-32157; and Victoria City Power LLC (4169), Case No. 21-32158. The Debtors' mailing address is: 5850 San Felipe, Ste 601, Houston, Texas 77057.

> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN JULY 15, 2021.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this *Motion for Entry of an Order (i) Authorizing Senior Secured Postpetition Financing Pursuant to 11 U.S.C. § 364, (ii) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (iii) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, and 364, and (iv) Granting Related Relief* (the "Motion") and in support respectfully represent as follows:[2]

## PRELIMINARY STATEMENT

1. Without the Emergency DIP Facility, the Debtors have no money. The Debtors require immediate access to the $1,000,000.00 new money Emergency DIP Facility to preserve the value of their assets, employ professionals, and otherwise fund the administration of these chapter 11 cases (collectively, the "Chapter 11 Cases"), and begin to bring their two gas-fired power plants back online to restore operations, thereby restoring their revenues. The emergency postpetition financing will provide urgent liquidity as a bridge to the comprehensive Definitive Documentation for a Replacement Facility that will pay off the Emergency DIP Facility and further fund a process for the sale of substantially all of the Debtors' assets or an alternate path to reorganization. Pending finalization of the Replacement Facility, the Emergency DIP Facility is a stop-gap measure at the outset of these Chapter 11 Cases that is essential to their success.

2. As set forth more fully in the *Declaration of Hugh Smith in Support of Chapter 11 Petitions, First Day Motions, and Debtors' Emergency Motion for Entry of an Order*

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Emergency Order, the Term Sheet, or the Smith Declaration (each as defined herein).

2

*(I) Authorizing Senior Secured Postpetition Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, and 364, and (IV) Granting Related Relief* (the "Smith Declaration"), the Debtors require cash immediately to protect their assets, stabilize their businesses, and begin to restore operations and prepare for a sale process. The Debtors, their professionals, and the Senior Secured Noteholders have worked collaboratively and efficiently toward these goals by negotiating and executing the *Emergency Senior Secured Superpriority Debtor-in-Possession Credit Facility Term Sheet* (the "Term Sheet"), attached hereto as Exhibit 1, which establishes a foundation for maximizing the value of the Debtors' assets in these Chapter 11 Cases. The Senior Secured Noteholders are the only parties both willing and able to provide financing on an emergency basis and on such favorable terms, as set forth in the Term Sheet. Accordingly, the Debtors request entry of the Emergency Order.

**RELIEF REQUESTED**

3.  Pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1, 4002-1, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), the Debtors request entry of an emergency order substantially in the form attached hereto (the "Emergency Order"), *inter alia,*

    (i)    authorizing the Debtors to obtain immediate postpetition secured financing on the terms set forth in the Term Sheet and Emergency Order;

    (ii)    granting liens and providing superpriority administrative expense claims;

    (iii)    authorizing the use of Cash Collateral (as defined herein);

    (iv)    granting adequate protection to the Prepetition Secured Parties (as defined herein);

3

  (v)  modifying the automatic stay under section 363 of the Bankruptcy Code; and

  (vi)  granting related relief.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these Cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.  Pursuant to Bankruptcy Rule 7008, the Debtors consent to the entry of a final order by the Court with regard to the relief requested in the Motion. The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 4001, 6004, and 9014 and Local Rules 1075-1, 4002-1, and 9013-1.

## BACKGROUND

6.  On June 27, 2021 (the "Petition Date"), each Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. The Chapter 11 Cases are jointly administered. No trustee, examiner, or official committee has been appointed in these Chapter 11 Cases. The Debtors are continuing to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.  Additional detail regarding the Debtors, their business, the events leading to the commencement of these Chapter 11 Cases, and the facts and circumstances supporting the relief requested herein is set forth in the Smith Declaration and is incorporated herein by reference.

## SUMMARY OF THE DEBTORS' PREPETITION
## FUNDED INDEBTEDNESS AND OTHER DEBT

8. As of the Petition Date, a substantial portion of the Debtors' liabilities consisted of funded indebtedness. None of the Debtors' funded indebtedness or equity is or was publicly offered for sale or publicly traded.

### A. Prepetition Senior Secured NPA

9. Pursuant to that certain *Senior Secured Note Purchase Agreement* dated as of February 23, 2018 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Senior Secured NPA," and together with the other "Financing Documents" as defined therein, the "Prepetition Senior Secured Note Documents"), among, *inter alia*, (a) Agilon Energy Holdings II, LLC (the "Borrower"), (b) the guarantors party thereto (the "Prepetition Guarantors"), (c) Wilmington Trust, National Association, as the Collateral Agent under the Collateral Agency Agreement (each as defined in the Prepetition Senior Secured NPA, in such capacity, the "Prepetition Agent"), and (d) the purchasers and noteholders party thereto (collectively, the "Senior Secured Noteholders," and together with the Prepetition Agent, and all other secured parties under the Prepetition Senior Secured Note Documents, the "Prepetition Secured Parties"), the Borrower issued senior secured term notes in the initial aggregate principal amount of $50,000,000 (the "Term Notes," as defined in the Prepetition Senior Secured Note Documents) and senior secured revolving notes in the aggregate principal amount of $23,000,000 (the "Revolving Notes," as defined in the Prepetition Senior Secured Note Documents, and together with the Term Notes, the "Senior Notes"). As of the Petition Date, the aggregate outstanding principal amount of the Senior Notes was not less than $67,337,975.[3]

---

[3] Such amount does not include all secured obligations under the Senior Notes, including, without limitation, costs, expenses, fees (including attorneys' fees), indemnities, reimbursement obligations and other charges and obligations that may be due and payable under the Senior Notes and the other Prepetition Senior Secured Note Documents.

10. As security for the Senior Notes, the Debtors granted to the Prepetition Agent for the benefit of the Prepetition Secured Parties first priority liens upon and senior security interests in (collectively, the "Prepetition Liens") substantially all of the Debtors' property and assets (collectively, the "Prepetition Collateral"). All of the Debtors' cash (including any cash in deposit accounts of the Debtors), wherever located, constitutes Prepetition Collateral (the "Cash Collateral") of the Prepetition Secured Parties.

### B. Subordinated Notes

11. Pursuant to a separate *Securities Purchase Agreement* dated as of February 23, 2018 (as amended, restated, or otherwise supplemented from time to time, the "SPA"), Agilon Energy Holdings II, LLC issued $22 million in Senior Subordinated Notes due in 2025 (the "Subordinated Notes"). The Subordinated Notes are subordinate in all respects to the Senior Notes. As of the Petition Date, the aggregate principal amount outstanding, excluding fees and expenses, on account of the Subordinated Notes was not less than approximately $26 million.[4]

### C. Other Trade and Miscellaneous Unsecured Debt

12. The Debtors estimate that, as of the Petition Date, claims of trade and miscellaneous unsecured creditors exceeded $14.5 million.[5]

### THE DEBTORS' URGENT NEED FOR POSTPETITION FINANCING

13. The Debtors have no cash on hand and, because their operations are currently suspended, no current operating revenues, although they anticipate being able to stabilize their businesses and restart their operations through these Chapter 11 Cases. The Debtors are currently

---

[4] Such amount is based on the Debtors' analysis of its books and records to date. The Debtors reserve any and all rights to amend such amount as they complete their respective analysis. Such amount does not include interest, PIK interest, default interest, make-whole, other premiums, costs, expenses, fees (including attorneys' fees), indemnities, reimbursement obligations and other charges and obligations that may be due and payable under the Subordinated Notes.

[5] Such amount is based on the Debtors' analysis of its books and records to date. The Debtors reserve any and all rights to amend such amount as they complete their respective analysis.

not generating any revenue and are in default under their prepetition financing facilities. They have no funds available to pay the administrative expenses of these Chapter 11 Cases, re-start their operations, or support an effective reorganization, absent access to a postpetition financing facility and the use of the Cash Collateral that will be generated once they are able to re-start their operations.

14. In the days leading up to and immediately following the Petition Date, the Debtors' senior secured lenders offered to support the Debtors through two stages of financing: an emergency facility to give the Debtors breathing room to stabilize their businesses by retaining independent professionals, restoring critical insurance coverage that had been suspended prepetition due to nonpayment, and, solely to the extent necessary, paying critical vendors, followed by a larger and more comprehensive Replacement Facility designed to support the Debtors' financial requirements in bringing their power plants back to operation and to fund an orderly sales process and reorganization aimed at maximizing value for the Debtors and their stakeholders. Without immediate access to the emergency funding necessary to stabilize the Debtors and to facilitate the rapid negotiation and approval of a more comprehensive postpetition financing facility, the Debtors will have access to no funding at all, let alone the funding that will be required to adequately insure the Facilities, bring them back online in order to generate revenues during the peak summer energy market, and fund the administration of these Chapter 11 Cases and a process to market and sell the Debtors' assets. Pending negotiation and approval of a Replacement Facility to fund ongoing administration of these Chapter 11 Cases, resumption of operations, and a sales process, the Emergency DIP Facility is an essential stop-gap measure to preserve the going concern value of the Debtors and their assets at the outset of these Chapter 11 Cases.

15. Under the present circumstances, the Debtors have been unable to obtain financing on more favorable terms that those set forth in the DIP Documents and have concluded, in the exercise of their sound business judgment, that the Emergency DIP Facility represents the best financing available to them at this time

16. The Debtors cannot preserve the value of the Debtors' estates for the benefit of their creditors without the relief requested in the Motion.

### SUMMARY OF THE DEBTORS' PROPOSED EMERGENCY DIP FACILITY

17. Pursuant to Bankruptcy Rules 4001(b) through (d), the following is a concise summary highlighting the proposed material terms of the Emergency DIP Facility, as specified in the Term Sheet and Emergency Order:[6]

| Material Provision | Summary Description of Material Provision |
|---|---|
| **DIP Credit Agreement Parties** Fed. R. Bankr. P. 4001(c)(1)(B) Term Sheet, at 1 | **Borrowers**: Agilon Energy Holdings II, LLC, Victoria Port Power LLC, and Victoria City Power LLC |
| | **Guarantors**: None |
| | **Lenders**: The Prudential Insurance Company of America, Prudential Legacy Insurance Company of New Jersey, and Prudential Retirement Insurance and Annuity Company |
| | **Administrative Agent**: Wilmington Trust, National Association. |
| **Amount** Fed. R. Bankr. P. 4001(c)(1)(B) Emergency Order, ¶ (i); Term Sheet, at 1 | A new money senior secured, superpriority, priming delayed multi-draw term loan in a principal amount not to exceed $1 million. |
| **Use of Proceeds** Fed. R. Bankr. P. 4001(c)(1)(B) Emergency Order, ¶ B(iv); Term Sheet, at 3 | The proceeds of the Emergency DIP Loans will be used solely in accordance with the Approved Budget for (a) working capital and general corporate purposes of the Debtors, (b) bankruptcy-related costs and expenses, and (c) costs and expenses related to the Emergency DIP Facility. |
| **Conditions of Closing and Borrowing** Fed. R. Bankr. P. 4001(c)(1)(B) | As conditions precedent to the DIP Lenders' obligation to fund the Initial Emergency DIP Loan or any part thereof (the date of satisfaction of such conditions, the "<u>Emergency Funding Closing Date</u>"): |

---

[6] The summaries and descriptions of the terms and conditions of the Emergency DIP Facility and the proposed Emergency Order set forth in this Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the Emergency Order. In the event there is a conflict between this Motion and the Emergency Order, the Emergency Order, as applicable, shall control in all respects. All defined terms in this summary and description shall have the meanings proscribed to them in the Emergency Order or the Term Sheet, as applicable.

| Material Provision | Summary Description of Material Provision |
|---|---|
| Term Sheet, at 5-6 | (i) the entry of the Emergency Order by the Bankruptcy Court no later than twenty (20) days after the Petition Date, in form and substance acceptable to the DIP Agent and DIP Lenders in their sole discretion;<br><br>(ii) Debtors shall have delivered to the DIP Agent and the DIP Lenders a closing certificate, in form and substance satisfactory to the DIP Agent and the DIP Lenders, duly executed by the independent manager of the Debtors, appropriately completed, by which such manager shall certify to the DIP Lenders all of the conditions precedent to the Initial Emergency DIP Loan have been satisfied;<br><br>(iii) All of the "first day" motions, orders and related pleadings shall have been reviewed in advance by the DIP Lenders and the DIP Agent and shall be reasonably satisfactory in form and substance to the DIP Lenders, provided, however, that this requirement shall not apply to motions regarding nonsubstantive administrative matters that were filed prior to the date of the Term Sheet shall be deemed satisfactory to the DIP Lenders;<br><br>As conditions precedent to the DIP Lenders' obligation to fund all Emergency DIP Loans:<br><br>(a) Debtors shall have timely delivered to the DIP Lenders the Approved Budget or any update thereto required to be delivered in accordance with the Term Sheet;<br><br>(b) Debtors shall have delivered to the DIP Agent and the DIP Lenders a notice of borrowing, in form and substance approved by the DIP Agent and DIP Lenders in connection with the draw request;<br><br>(c) no Event of Default shall have occurred and be continuing on the Emergency Funding Closing Date, or after giving effect to the Emergency DIP Facility;<br><br>(d) all representations and warranties of the Debtors shall be true and correct in all material respects to the best knowledge of the independent manager, after due inquiry;<br><br>(e) subject to Bankruptcy Court approval, (a) each Debtor shall have the corporate power and authority to make, deliver and perform its obligations under the Term Sheet and the Emergency Order, and (b) no consent or authorization of, or filing with, any person (including, without limitation, any governmental authority) shall be required in connection with the execution, delivery or performance by each Debtor, or for the validity or enforceability in accordance with its terms against such Debtor, of the Term Sheet and the Emergency Order except for consents, authorizations and filings which shall have been obtained or made and are in full force and effect; and<br><br>(f) the DIP Agent and the DIP Lenders shall have received such other information and/or deliverables as the DIP Agent and DIP Lenders may reasonably require. |
| **Sale Milestones**<br>Fed. R. Bankr. P. 4001(c)(1)(B) | N/A |
| **DIP Financing Maturity Dates**<br>Fed. R. Bankr. P. 4001(c)(1)(B)<br>Term Sheet, at 3 | The Emergency DIP Facility shall mature upon the earliest of: (i) thirty (30) days after the Emergency Funding Closing Date, (ii) the date the Interim Order is entered, and (iii) termination by the DIP Lenders following the occurrence of an Event of Default. |

| Material Provision | Summary Description of Material Provision |
|---|---|
| **Interest Rate**<br>Fed. R. Bankr. P. 4001(c)(1)(B)<br>Term Sheet, at 3–4 | The Emergency DIP Facility shall accrue interest at a rate equal to either of the following at the election of the Borrower: (i) LIBO Rate + 8.00% per annum (with one (1)-month Interest Period and 1.00% floor), computed on the basis of the actual number of days elapsed over a year of 360 days or (ii) Prime Rate + 7.00% per annum, computed on the basis of the actual number of days elapsed over a year of 365 or 366 days, as applicable.<br><br>Default rate shall be an incremental 2.00% per annum. |
| **Fees**<br>Fed. R. Bankr. P. 4001(c)(1)(B)<br>Term Sheet, at 4 | A fee to the Collateral Agent in the amount of $50,000 per annum (which shall be fully earned upon entry of the Emergency Order and payable with the proceeds of the Initial Emergency DIP Loan). |
| **Events of Default**<br>Emergency Order, ¶ 3(f)<br>Fed. R. Bankr. P. 4001(c)(1)(B)(v), (x)<br>Emergency Order, ¶ 8,<br>Term Sheet, at 11–12 | Certain customary default provisions, which include, among other things:<br><br>(i) any payment default by the Debtors under the Emergency DIP Facility;<br><br>(ii) any Debtor's failure to comply with any requirement, agreements and covenants of the Term Sheet, the Approved Budget, or any DIP Order;<br><br>(iii) dismissal of any of the Chapter 11 Cases or any successor case or conversion of any Debtor bankruptcy case to a Chapter 7 case or the sale of substantially all of the assets of any Debtor without the advance written consent of the DIP Lenders;<br><br>(iv) the use of Cash Collateral for any purpose other than as permitted by the Term Sheet, any DIP Order or the Approved Budget. |
| **Security and Priority Status**<br>Fed. R. Bankr. P. 4001(c)(1)(B)(i)<br>Emergency Order, ¶¶ 3,4,<br>Term Sheet, at 8–10 | (a) Superpriority administrative expense claim status in the Chapter 11 Cases of the Debtors, pursuant to section 364(c)(1) of the Bankruptcy Code, with priority over any and all administrative expenses, whether heretofore or hereafter incurred, of the kind specified in sections 503(b) or 507(a) of the Bankruptcy Code, and subject <u>only</u> to the Carve Out;<br><br>(b) A perfected first priority lien, pursuant to Section 364(c)(2) of the Bankruptcy Code, on all property of the Debtors' estates in the Chapter 11 Cases that is not subject to valid, perfected, and non-avoidable liens as of the commencement of the Chapter 11 Cases, excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code;<br><br>(c) A perfected junior lien, pursuant to Section 364(c)(3) of the Bankruptcy Code, on all property of the Debtors' estates in the Chapter 11 Cases, that is subject to Permitted Prior Liens or to valid liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code;<br><br>(d) A perfected first priority, senior priming lien, pursuant to Section 364(d) of the Bankruptcy Code, on all of the property of the Debtors' estates in the Chapter 11 Cases that is subject to the Primed Liens, to be granted to the DIP Agent, for the benefit of itself and the DIP Lenders, which senior priming liens in favor of the DIP Agent shall also prime any liens granted after the commencement of the Chapter 11 Cases to provide adequate protection in respect of any of the Primed Liens; (clauses (b), (c) and (d) collectively, the "<u>DIP Liens</u>").<br><br>The DIP Liens shall be subject <u>only</u> to any Permitted Prior Liens and the Carve Out. |

10

| Material Provision | Summary Description of Material Provision |
|---|---|
| **Validity of Prepetition Liens**<br>Fed. R. Bankr. 4001(c)(B)(iii) | N/A[7] |
| **Cash Collateral**<br>Fed. R. Bankr. P. 4001(b)(1)(B)<br>Emergency Order, ¶ B(iv), Term Sheet, at 3. | The Debtors will be permitted to use cash collateral in such amounts and for such purposes at such times as set forth in the Approved Budget, subject to the adequate protection provisions provided in the Term Sheet and Emergency Order. |
| **Adequate Protection**<br>Fed. R. Bankr. P. 4001(b)(1)(B)(iv), (c)(1)(B)(ii)<br>Emergency Order, ¶¶ 9, 10, Term Sheet, at 10–11 | Adequate protection shall be granted to the Prepetition Agent, for the benefit of itself and the Prepetition Secured Parties, in the form of (i) Adequate Protection Liens on the DIP Collateral, subject to the DIP Liens, and Permitted Prior Liens; and (ii) allowed superpriority administrative claims, subject only to the DIP Superpriority Claims and the Carve Out. |
| **Waiver of 506(c) and 552(b)**<br>Fed. R. Bankr. P. 4001(c)(1)(B)(x) | N/A |
| **Carveout**<br>Fed. R. Bankr. P. 4001(c)(1)(B)<br>Emergency Order, ¶ 22 | The "Carve Out" means the sum of (i) all fees required to be paid (a) to the Clerk of the Court and (b) to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses, other than any restructuring, sale, success, or other transaction fee of the counsel, investment bankers, or financial advisors of the Debtors and any committee[8] (the "Allowed Professional Fees"), not to exceed the lesser of (x) the actual amounts, and (y) the amounts set forth for such professionals in the Approved Budget for such period, incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code at any time before or on the first business day following the Maturity Date. |
| **Indemnification**<br>Fed. R. Bankr. P. 4001(c)(1)(B)(ix)<br>Emergency Order, ¶ 21, Term Sheet, at 13 | The DIP Agent and the DIP Lenders will have no liability for, and will be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court of competent jurisdiction to arise from the gross negligence or willful misconduct of the indemnified party. |
| **Right to File Plan**<br>Fed. R. Bankr. P. 4001(c)(1)(B)(v) | N/A |

---

[7] For purposes of this Emergency DIP Facility, the parties are not stipulating to lien validity or priority although, as set forth in the Smith Declaration, the Debtors believe the liens and claims of the Senior Noteholders are valid, senior, and non-avoidable with priority over all liens other than Prior Permitted Liens.

[8] The Carve Out does not include any success fee or other fee due and payable upon consummation of a transaction.

11

| Material Provision | Summary Description of Material Provision |
|---|---|
| **Modification of the Automatic Stay** Fed. R. Bankr. P. 4001(c)(1)(B)(iv) Emergency Order, ¶ 3 | The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from, the Court, to the extent necessary to effectuate the terms of the Emergency Order. |
| **Releases** Fed. R. Bankr. P. 4001(c)(1)(B)(viii) | N/A |

## STATEMENT REGARDING SIGNIFICANT PROVISIONS

18. The Emergency Order contains certain of the provisions (the "Significant Provisions") identified in paragraph 27 of the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures") as set forth below:

   (i) **No Case Milestones**. The Emergency Order does not contain Case Milestones.

   (ii) **No Cross-Collateralization**. The Emergency Order does not provide for cross-collateralization.

   (iii) **No Roll ups**. The Emergency Order does not provide for (i) provisions deeming prepetition debt to be postpetition debt; and (ii) provisions requiring the proceeds of postpetition loans to be used to repay pre-petition debt.

   (iv) **Liens on Avoidance Actions**. The Emergency Order does not contain liens on avoidance actions.

   (v) **Default Provisions and Remedies**. As detailed in the Summary of Material Terms herein, the Term Sheet contains events of default that are usual and customary for debtor in possession financings.

   (vi) **Releases**. The Emergency Order does not contain releases, but does contain indemnification provisions.

   (vii) **Limits on Use of Cash Collateral other than "Carve-Outs."** Proceeds of the Emergency DIP Facility shall be used in a manner consistent in all material respects with the terms and conditions of this Emergency Order and the DIP Documents and in accordance in all material respects with the Approved Budget.

   (viii) **Priming Liens**. The Emergency Order provides for priming of the Prepetition Liens with the consent of the Prepetition Secured Parties and

provision of adequate protection. Nothing in the Emergency Order shall constitute a finding or ruling by the Court that any alleged Permitted Prior Lien is, or is not, valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests.

(ix) **No Provisions that Limit the Ability of Estate Fiduciaries to Fulfill their Duties under the Bankruptcy Code and Applicable Law**. The Emergency Order does not limit the ability of the estate fiduciaries to fulfill their duties under the Bankruptcy Code and applicable law.

(x) **Validity, Perfection, and Amount of Prepetition Liens**. As detailed in the Summary of Material Terms herein, the Emergency Order does not include stipulations or admissions regarding the Prepetition Liens.

(xi) **Provisions Granting Superpriority Claims**. As detailed in the Summary of Material Terms herein, the Emergency Order provides for superpriority administrative claims against the Debtors with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases or any successor cases.

(xii) **506(c)/552 Waivers**. The Emergency Order does not contain section 506(c) or 552 waivers.

19. The Debtors, the DIP Lenders, and the Prepetition Agent reserve the right to include some or all of these provisions, among others, in the Replacement Facility and related orders.

## BASIS FOR RELIEF

**A. The Debtors Should Be Authorized to Obtain Postpetition Financing Through the DIP Documents as a Sound Exercise of Their Business Judgment.**

20. The Court should authorize the Debtors, as an exercise of their sound business judgment, to enter into the DIP Documents and obtain access to the Emergency DIP Facility. Courts grant considerable deference to a debtor's business judgment in obtaining postpetition secured credit consistent with the provisions of and policies underlying the Bankruptcy Code. *See ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) (explaining that the business judgment standard "encourages discretion"); *In re L.A. Dodgers LLC*,

13

457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."); *c.f.*, *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Aug. 15, 2019) (order approving postpetition financing as exercise of debtors' business judgment); *iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. June 7, 2018) (same); *In re N. Bay Gen. Hosp., Inc.*, No. 08-20368 (Bankr. S.D. Tex. July 11, 2008) (same).

21. To determine whether a debtor has met this business judgment standard, a court should examine "whether a reasonable business person would make a similar decision under similar circumstances." *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) (noting that "more exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially").

22. The Debtors' determination to move forward with the Emergency DIP Facility is a sound exercise of their business judgment following a thorough process and careful evaluation of the availability, viability, and lack of alternatives likely to result in a favorable outcome given their immediate needs. The Debtors and their advisors determined that the Debtors require postpetition financing to administer the Chapter 11 Cases, to protect their assets and restore their business operations, and to commence a marketing and sales process. The Debtors negotiated the DIP

Documents with the DIP Lenders in good faith, at arm's length, and with the assistance of their advisors. The DIP Lenders are not willing to provide the financing necessary in the absence of the protections provided in the Term Sheet and Emergency Order.

23. Accordingly, entry into the Term Sheet and other DIP Documents and approval of the Emergency DIP Facility are appropriate within the Debtors' business judgment.

**B.    No Comparable Alternative to the Emergency DIP Facility Is Reasonably Available.**

24. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by section 364(c) of the Bankruptcy Code. *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see, e.g.*, *In re UGHS Senior Living, Inc.*, No. 15-80399-G3-11, 2015 WL 7307317, at *8 (Bankr. S.D. Tex. Nov. 18, 2015). Where few lenders are likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Savings Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *In re Snowshoe Co.*, 789 F.2d at 1088 ("The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable.").

25. Other than the proposed Emergency DIP Facility, there are no viable or comparable financing alternatives available to the Debtors. For a number of reasons, including the nature and state of the Debtors' business, the immediacy of the Debtors' financing needs, and the liens of the Prepetition Secured Parties on the Prepetition Collateral, the Debtors submit that the Emergency DIP Facility represents the best financing available to them at this time.

  **C.**  **The Debtors Should Be Authorized to Grant Liens and Superpriority Claims to the DIP Lenders.**

  26.  If a debtor in possession is unable to obtain credit under the provisions of section 364(c) of the Bankruptcy Code, the debtor in possession may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly referred to as a "priming lien." 11 U.S.C. § 364(d). Section 364(d)(1) of the Bankruptcy Code provides that the court, after notice and hearing, may authorize the debtor in possession to obtain credit or incur debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –

    (A)  the trustee is unable to obtain such credit otherwise; and

    (B)  there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1); *see also In re McKenzie Energy Corp.*, 228 B.R. 854, 874 (S.D. Tex. 1998) (citing section 364(d)).

  27.  As discussed above, the Debtors lack alternative financing options. The Debtors do not have sufficient unencumbered assets to secure debtor in possession financing to fund non-consensual chapter 11 cases. Accordingly, the Emergency DIP Facility's structure is appropriate in light of the Debtors' financing needs and the lack of viable non-priming debtor in possession financing alternatives.

  28.  The Prepetition Secured Parties have consented to the priming of the Prepetition Liens in light of the adequate protection package offered in the Emergency Order. Accordingly, the relief requested pursuant to section 364(d)(1) of the Bankruptcy Code is both warranted and appropriate under the circumstances.

<b><u>REQUEST FOR USE OF CASH COLLATERAL</u></b>

  29.  The Debtors' use of property of their estates, including the Cash Collateral, is governed by section 363 of the Bankruptcy Code, which provides in relevant part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

30. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

31. Bankruptcy Code section 363(e) requires adequate protection of interests in cash collateral when a debtor seeks authority to use cash collateral. 11 U.S.C. § 363(e). Generally, what constitutes adequate protection is decided on a case-by-case basis. *In re Energy Partners, Ltd.*, 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009); *see In re Columbia Gas Sys., Inc.*, No. 91-803, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case."); *see also In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006) (discussing adequate protection being required to maintain the status quo between a secured party and the debtor).

32. The Debtors intend to provide the Prepetition Secured Parties with adequate protection in the form of (a) replacement liens and (b) superpriority claims. The Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral in consideration of the proposed adequate protection package. Accordingly, the Court should approve the Debtors' use of Cash Collateral and the adequate protection provided to the Prepetition Secured Parties under section 363(c)(2) of the Bankruptcy Code.

## THE DEBTORS SHOULD BE PERMITTED TO MAKE EMERGENCY BORROWINGS UNDER THE POSTPETITION FINANCING

33. This Court is empowered to conduct an emergency hearing on this Motion and enter the Emergency Order. Bankruptcy Rule 4001(c) governs the procedures for securing authorization to obtain debtor in possession financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

FED. R. BANKR. P. 4001(c).

34. Upon request, however, a bankruptcy court is empowered to conduct an interim expedited hearing on the motion at which it may authorize a debtor to use cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. *See* Bankruptcy Rule 4001(b)(2). Section 363(c)(3) of the Bankruptcy Code authorizes a court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3). Furthermore, the Complex Case Procedures provide that "[o]n motion by the debtors, a hearing [] will routinely be conducted as a first day hearing to consider either cash collateral use and/or interim debtor-in-possession financing []." Complex Case Procedures, ¶ 24.

35. The Debtors have an immediate need for up to $1 million under the Emergency DIP Facility for ongoing liquidity, payment for vital services, and other working capital needs. It is essential that the Debtors immediately stabilize their operations and resume paying for ordinary, postpetition operating expenses to preserve the value of the Debtors' estates for the benefit of all of the Debtors' stakeholders.

18

36. If interim, emergency relief is not obtained, the Debtors, their estates, their creditors and equity holders, their business, and their assets will suffer immediate and irreparable harm.

### REQUEST FOR MODIFICATION OF THE AUTOMATIC STAY

37. The Emergency Order contemplates a modification of the automatic stay established pursuant to section 362 of the Bankruptcy Code, to the extent necessary, to permit the DIP Agent and Prepetition Secured Parties to perfect their interest in collateral and to take various actions without further order of or application to the Court.

38. Stay modification provisions of this type are customary features of postpetition debtor in possession financing facilities and are reasonable under the circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the Emergency Order.

### WAIVERS OF BANKRUPTCY RULES 6003(b), 6004(a), AND 6004(h)

39. In order to successfully implement the foregoing, the Debtors respectfully request that the Court waive the notice requirements provided for by Bankruptcy Rule 6004(a), the twenty-one-day stay provided for by Bankruptcy Rule 6003(b), and the fourteen-day stay provided for by Bankruptcy Rule 6004(h). The Debtors believe, for the reasons set forth above, that ample justification exists for the Court to waive Bankruptcy Rule 6003(b), 6004(a), and 6004(h).

### NOTICE

40. Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) those persons who have formally appeared and requested notice of service in this proceeding pursuant to Bankruptcy Rules 2002; (iii) counsel for and the members of any committees appointed by this Court; (iv) counsel for the Senior Secured Noteholders and the DIP Lenders; (v) the thirty (30) largest unsecured creditors of the Debtors; and (vi) governmental agencies having a regulatory or statutory interest in these cases. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

The Debtors request that the Court enter the Emergency Order, granting the relief requested in this Motion and such other and further relief as is appropriate under the circumstances.

Respectfully submitted,

By: */s/ Elizabeth M. Guffy*
Elizabeth M. Guffy
Texas Bar No. 08592525
Simon R. Mayer
Texas Bar No. 24060243
**LOCKE LORD LLP**
600 Travis St., Suite 2800
Houston, TX 77002
Telephone: (713) 226-1200
Facsimile: (713) 223-3717
Email: eguffy@lockelord.com
simon.mayer@lockelord.com

***Proposed Attorneys for***
***Agilon Energy Holdings II LLC, et al.***

### Rule 9013-1(i) Certificate

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Elizabeth M. Guffy*
Elizabeth M. Guffy

### Certificate of Service

The undersigned certifies that this Motion was served electronically on July 13, 2021 via ECF on those parties registered to receive such ECF service in these Chapter 11 Cases.

*/s/ Elizabeth M. Guffy*
Elizabeth M. Guffy