IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| AGILON ENERGY HOLDINGS II LLC, *et al.* | § § | Case No. 21-32156 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |

**DEBTORS' APPLICATION FOR ORDER AUTHORIZING
THE EMPLOYMENT AND RETENTION OF
GRANT THORNTON LLP AS FINANCIAL ADVISOR**

> **This application seeks an order that may adversely affect you. If you oppose the application, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the application should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the application and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the application at the hearing.**
>
> **Represented parties should act through their attorney.**

**To the Honorable Marvin Isgur,
United States Bankruptcy Judge:**

      Agilon Energy Holdings II LLC, Victoria Port Power LLC, and Victoria City Power LLC (collectively, the "***Debtors***"), file this *Application for Order Authorizing the Employment and Retention of Grant Thornton LLP as Financial Advisor* (the "***Application***"). In support of this Application, the Debtors respectfully state:

---

[1] The debtors and debtors in possession these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Agilon Energy Holdings II LLC (3389) ("***Agilon***"), Case No. 21-32156; Victoria Port Power LLC (4894) ("***VPP***"), Case No. 21-32157; and Victoria City Power LLC (4169) ("***VCP***" and together with Agilon and VPP, the "***Debtors***"), Case No. 21-32158. The Debtors' mailing address is: 5850 San Felipe, Ste 601, Houston, Texas 77057.

1

**Summary of Relief Requested**

1. The Debtors seek authority to retain Grant Thornton LLP ("**GT**" or "**Grant Thornton**") as their financial advisor, effective as of the Petition Date (defined below), subject to further order of the Court and in accordance with the terms and conditions set forth in that certain engagement agreement, dated June 28, 2021 between GT and the Debtors (the "***Engagement Agreement***").

2. The relief requested in this Application is supported by the Declaration of Loretta Cross in Support of Debtors' Application for Order Authorizing the Employment and Retention of Grant Thornton LLP as Financial Advisor (the "***Cross Declaration***") attached to this Application as **Exhibit A**. A true and correct copy of the Engagement Agreement is attached as **Exhibit 1** to the Cross Declaration.

**Jurisdiction and Venue**

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b) ); and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Local Rules***") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the relief requested are Bankruptcy Code sections 105(a), 327(a), 330, 1107, and 1108 of title 11 of the United States Code (the "***Bankruptcy Code***"), rules

2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules.

## Background

6. On June 27, 2021 (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "***Chapter 11 Cases***").

7. The Debtors continue in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On June 28, 2021, the Court entered an order [Docket No. 5] authorizing the joint administration and procedural consolidation of this chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

8. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. No statutory committee has been appointed in these chapter 11 cases.

## Grant Thornton's Qualifications

9. GT is comprised of leading industry professionals with significant experience in the financial and marketing aspects of large, complex chapter 11 cases. GT's professionals have experience as a financial advisor where they assist on numerous aspects of chapter 11 cases and experience in matters of this size and complexity. GT's professionals have acted as financial advisor in many large bankruptcy cases in various districts nationwide. Some in- and out-of-court restructurings and advisory assignments in the power industry in which GT, or the assigned professionals, have been involved include work performed for or related to Allegheny Energy, Brazos Electric Coop, Calpine, Dynegy, El Paso Energy, Electric Cities, Enron, Mirant, Mobile

3

Energy Services, NRG, Pioneer Electric Coop, Power Company of America and Reliant Resources.

10. Since June 28, 2021, GT has worked closely with the Debtors' management, creditors, and other professionals and advisors in exploring possible solutions to the Debtors' financial problems, including the sale of substantially all of the Debtors' operating assets. As a result of its engagement in this process prepetition, GT is intimately familiar with the Debtors' financial affairs, debt structure, business operations, capital structure, key stakeholders, and related matters.

11. The Debtors believe that GT has developed significant, relevant experience and expertise regarding the Debtors and their operations and assets, which makes GT both well-qualified and uniquely situated to provide the services required by the Debtors in these chapter 11 cases. Moreover, if the Debtors were required to find an alternative financial advisor, they would incur substantial additional expense in bringing new professionals up to speed on the Debtors' operations and assets.

12. The Debtors propose to retain GT post petition in accordance with the terms set out in the Engagement Agreement.

## Services to be Provided by Grant Thornton

13. The Debtors request entry of an order authorizing the employment and retention of GT as the financial advisor for the Debtors and their chapter 11 cases, pursuant to the terms and conditions of the Engagement Agreement, which were negotiated at arms' length and in good faith. Under the Engagement Agreement, GT will perform the following services at the request of the Debtors:

i. Analyze the Company's financial position, business plans and financial projections prepared by management including, but not limited to, commenting on assumptions and comparing those assumptions to historical Company and industry trends;

ii. Advise management on potential options available to the Company, including the bankruptcy process and exit strategy;

iii. Consult with management in connection with the development of financial projections;

iv. Assist management with its communications with customers, suppliers, statutory committees, and other parties-in-interest;

v. Analyze the Company's rolling 13-weeks cash receipts and disbursements forecast and assess liquidity and DIP financing needs;

vi. Consult with management regarding their valuation of the Company on a going-concern and liquidation basis; should a valuation report be required by the Company, a separate SOW would be issued;

vii. Consult with management and other professionals, in coordination with legal counsel, in the preparation of a disclosure statement, plan of reorganization and the underlying business plans from which those documents are developed;

viii. Assist management, in coordination with legal counsel, in evaluating competing disclosure statements, plans and other strategic proposals made by the Committee of Unsecured Creditors or other interested parties in the Case;

ix. Assist management in responding to information requests submitted by statutory committees and their legal and/or financial counsel;

x. Consult with management regarding the preparation of required financial statements, schedules of financial affairs, monthly operating reports, and any other financial disclosures required by the Bankruptcy Court;

xi. Provide expert advice and testimony regarding financial matters related to, including, among other things, the need for DIP financing, the feasibility of any proposed plan of reorganization, and the best interest of creditors test; and

xii. Provide additional services as requested from time to time by the Company and agreed to by Grant Thornton.

14. Debtors submit that it is necessary to employ and retain GT pursuant to sections 327 and 328 to serve as their financial advisor and that the employment of GT for these purposes is appropriate under the circumstances and in the best interest of the estates.

15. The services that have been and are to be provided by GT are necessary to enable the Debtors to maximize the value of their estates and will be complementary to, and not duplicative of, the services of the Debtors' other professionals. The Debtors believe that, based on all engagement proposals obtained and reviewed, that GT's rates are competitive and reasonable given Piper's quality of services and expertise.

### Terms of Engagement

16. Subject to approval by the Court, the Debtors propose to employ and retain GT to serve as the Debtors' financial advisor on the terms and conditions set forth in the Engagement Agreement.

17. In accordance with the terms of the Engagement Agreement, GT will be paid by the Debtors for services of the GT professionals at their customary hourly billing rates which shall be subject to the following rate structure:

| Professional | Hourly Rate |
|---|---|
| Managing Director | $710 |
| Director | $625 |
| Manager | $550 |
| Senior Associate | $425 |
| Associate | $300 |
| Paraprofessional | $120 |

18. Such rates shall be subject to adjustment at such times as GT adjusts rates generally.

19. In addition, Grant Thornton will be entitled to reimbursement of reasonable expenses incurred in connection with this engagement, including but not limited to travel, report production, delivery services, photocopying and other costs incurred in providing the Services.

GT's billings may include expenses related to this engagement including, but not limited to, the legal expenses for counsel, time, and expenses associated with administering the engagement and bankruptcy court appearances, as required, photocopying, facsimile transfers, hotel, meals, mileage and other travel plus costs associated with administrative expenses.

20.　　As part of the overall compensation payable to GT under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless GT under certain circumstances specified in the Engagement Agreement.  Unlike the market for other professionals that the Debtors may retain, such indemnification provisions are standard market terms for the retention of financial advisors.  The Debtors believe that such an indemnification provisions are comparable to those generally obtained by financial advisor firms of similar statute to GT and for comparable engagements, both in and out of bankruptcy.  Accordingly, the Debtors request that the Court also approve the terms of the indemnification contained in the Engagement Agreement.

## Disinterestedness

21.　　To the best of the Debtors' knowledge, GT is (a) a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code as required by section 327 of the Bankruptcy Code, as modified by sections 328(c) and 1107(b) of the Bankruptcy Code (b) does not hold or represent an interest adverse to the Debtor or their estates with respect to matters as to which GT is to be employed, and (c) has no connection to the Debtors, their creditors or related parties.

22.　　Specifically, as GT represents in the Cross Declaration, GT's members and employees are not and were not, within two years before the date of the filing of these chapter 11

cases, creditors, equity security holders, insiders or employees of the Debtors. In addition, as set forth in the Cross Declaration:

    a. GT, its members and employees are not and were not, within two years before the date of the filing of these chapter 11 cases, creditors, equity security holders, insiders or employees of the Debtors;

    b. GT will not employ any past or present employees of the Debtors in connection with its work as the Financial Advisor in these chapter 11 cases; and

    c. In its capacity as Financial Advisor in these chapter 11 cases, GT will not intentionally misrepresent any fact to any person.

23. GT has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Cross Declaration, GT has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

24. In addition, as set forth in the Cross Declaration, if any new materials facts or relationships are discovered or arise, GT will provide the Court with a supplemental declaration.

**Applicable Authority**

25. The Debtors submit that the retention of GT under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

    (a) is not a creditor, an equity security holder, or an insider;

  (b)  is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

  (c)  does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

26. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . . ." 11 U.S.C. § 328(a). The Debtors submit that the terms and conditions of GT's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since Debtors will require substantial assistance with the reorganization process, it is reasonable for Debtors to seek to employ and retain GT to serve as its financial advisor on the terms and conditions set forth herein.

## Notice

27. Notice of this Application has been provided to: (i) the Office of the United States Trustee; (ii) those persons who have formally appeared and requested notice of service in this proceeding pursuant to Bankruptcy Rules 2002; (iii) counsel for and the members of any committees appointed by this Court; (iv) counsel for the Debtors' first-lien prepetition lender and proposed debtor-in-possession credit facility; (v) the thirty (30) largest unsecured creditors of the Debtors; (vi) governmental agencies having a regulatory or statutory interest in these cases; and (vii) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(m). A copy of this Application is also available on the website of the Debtors' notice and claims agent at

9

http://cases.stretto.com/agilonenergy.  In light of the nature of the relief requested, and the exigent circumstances of these cases, the Debtors submit that no further notice is necessary.

28. The Debtors respectfully request that the Court (i) enter a proposed order in substantially the same form as that submitted with this Application granting the relief requested herein and approving Grant Thornton LLP's retention as financial advisors to the Debtors in these Bankruptcy Cases and (ii) provide such other relief as the Court deems appropriate and just.

Respectfully submitted,

/s/ Simon R. Mayer
Elizabeth M. Guffy
Texas Bar No. 08592525
Simon R. Mayer
Texas Bar No. 24060243
**LOCKE LORD LLP**
600 Travis St., Suite 2800
Houston, TX 77002
Telephone:  (713) 226-1200
Facsimile:  (713) 223-3717
Email: eguffy@lockelord.com
         simon.mayer@lockelord.com

*Proposed Attorneys for*
*Agilon Energy Holdings II LLC, et al.*

**Certificate of Service**

The undersigned certifies that this Application was served electronically on July 27, 2021 via ECF on those parties registered to receive ECF service in these chapter 11 cases.

/s/ Simon R. Mayer
Simon R. Mayer