IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| AGILON ENERGY HOLDINGS II LLC, *et al.* | § § | Case No. 21-32156 (MI) |
| Debtors.[2] | § § § | (Jointly Administered) |

### ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN GRANT THORNTON LLP AS FINANCIAL ADVISOR PURSUANT TO SECTIONS 327(A) AND 328 OF THE BANKRUPTCY CODE EFFECTIVE AS OF JUNE 27, 2021

Upon the application (the "*Application*")[3] of the debtors in possession in the above-captioned case (collectively, the "*Debtors*") for an order (this "*Order*") pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "*Bankruptcy Code*"), authorizing the Debtors to employ and retain Grant Thornton, LLP ("*GT*" or "*Grant Thornton*") as restructuring advisors, effective as of the Petition Date, on the terms set forth in the engagement letter (the "*Engagement Letter*") attached hereto as **Exhibit 1**; and upon the Declaration of Loretta Cross (the "*Cross Declaration*") in support of the Application attached to the Application as **Exhibit A**; and due and adequate notice of the Application having been given; and the Court being satisfied that GT is a "disinterested person" as such term is defined under section 101(14) of the Bankruptcy Code; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by this Application is in the best interests of the Debtors, their estates, their creditors,

---

[2] The debtors and debtors in possession these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Agilon Energy Holdings II LLC (3389) ("*Agilon*"), Case No. 21-32156; Victoria Port Power LLC (4894) ("*VPP*"), Case No. 21-32157; and Victoria City Power  LLC (4169) ("*VCP*" and together with Agilon and VPP, the "*Debtors*"), Case No. 21-32158. The Debtors' mailing address is: 5850 San Felipe, Ste 601, Houston, Texas 77057.

[3]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

1

and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. Pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Bankruptcy Local Rule 2014-1, the Debtors are hereby authorized to retain GT as financial advisors to the Debtors, effective as of the Petition Date on the terms set forth in the Engagement Letter.

2. The terms of the Engagement Letter, including without limitation, the compensation provisions and the indemnification provisions, are reasonable terms and conditions of employment and are hereby approved.

3. To the extent there is inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

4. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

5. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

6. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

7. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:

                                                       Marvin Isgur
                                                       United States Bankruptcy Judge

# Exhibit 1



Agilon Energy Holdings II LLC
Agreement Dated: June 28, 2021

**GRANT THORNTON LLP**
700 Milam Street
Suite 300
Houston, TX 77002

D  832 476 3600
F  713 655 8741
S  linkd.in/grantthorntonus
   twitter.com/grantthorntonus

June 28, 2021

Mr. Hugh Smith
Agilon Energy Holdings II LLC
5850 San Felipe Rd, Suite 601
Houston, TX 77057

Dear Mr. Smith,

Grant Thornton LLP ("Grant Thornton," "Firm," or "we") is pleased to provide professional services (the "Services") with respect *to* Agilon Energy Holdings II LLC Voluntary Petition Bankruptcy filing, Case Docket 21-32156 (the "Case"), and for the benefit of Agilon Energy Holdings II LLC and its affiliates ("Company," "Debtor," or "you"). The purpose of this **Engagement Letter** (the "Letter"), **Attachment A** – Standard Grant Thornton LLP Engagement Terms, and any related Statement(s) of Work (collectively, the "**Agreement**"), is to confirm the scope and terms of our engagement based on our mutual understanding. This Agreement is structured to allow us to offer professional services under a single agreement through the execution of a related Statements of Work for each project.

The Agreement is effective on June 28, 2021 (the "Effective Date") and will remain in full force and effect in accordance with its terms until terminated by either party in accordance with the termination provision set forth in Attachment A. You have advised us that you will request bankruptcy court approval of the terms of this Agreement, *nunc pro tunc* to June 28, 2021.

The Attachment A is an important part of this Agreement and should be carefully read. Given that applicable professional standards, laws, and regulations may change in the future, Grant Thornton reserves the right to amend this Agreement upon appropriate notice to you and with your consent.

**Bankruptcy Court Approval**

On June 28, 2021 (the "Petition Date"), the Debtor filed in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 title 11 of the United States Code (the "Bankruptcy Code"). This Agreement, and Grant Thornton's obligations and responsibilities relating to this engagement, are expressly subject to and conditioned upon Bankruptcy Court approval of the Agreement in its entirety. In the event that the Bankruptcy Court does not approve this Agreement in its entirety within 30 days of the date of this Agreement, Grant Thornton may, in its sole discretion, without prejudice to its other rights and remedies and without any liability arising therefrom, terminate this Agreement. Without limiting the generality of the foregoing, Grant Thornton may, in its sole discretion, extend the foregoing 30-day deadline for Bankruptcy Court approval. In the event the Bankruptcy Court approves the Agreement, but deletes or holds unenforceable certain provisions thereof, Grant Thornton in its sole discretion may accept the Agreement as modified, or may terminate the engagement as set forth above, all without prejudice to its other rights and remedies. In the event that Grant Thornton elects to terminate this engagement, then, promptly upon Grant Thornton's request, the Company hereby agrees to withdraw or amend any

© Grant Thornton LLP | All rights reserved
U.S. member firm of Grant Thornton International Ltd



Agilon Energy Holdings II LLC
Agreement Dated: June 28, 2021

Page 2 of 10

application filed with the Bankruptcy Court to approve Grant Thornton's retention in the Case.

## Delivering the Services

The Services we provide to you under this Agreement will typically be set forth in distinct Statement(s) of Work signed by Grant Thornton and your authorized representative, specifying matters including applicable professional standards, scope, deliverables, timing, fees and payment terms.

From time to time in the course of our relationship, we may perform Services that you request without a Statement of Work. This Agreement will cover all Services rendered whether or not the parties execute a Statement of Work. Such Services will be billed at our standard hourly rates or as otherwise mutually agreed.

If the Company fails to meet any undisputed payment obligation under this Agreement and in accordance with court orders, Grant Thornton may immediately suspend performance of the Services. If we elect to suspend our performance due to non-payment, the Services will not be resumed until your account is paid as agreed.

The Company acknowledges and agrees that the Company's management is responsible for supplying materially complete and accurate information, representations, and books and records upon which we must rely. It is further expressly agreed and understood that Grant Thornton shall have no responsibility or liability for auditing or verifying the Company's financial statements and supporting documentation (the "Company's Financials"). In performing its services hereunder, all parties in interest understand and acknowledge that Grant Thornton will be assuming and relying upon the truth and accuracy of the Company's Financials. Without limiting the generality of the foregoing, we will not audit or otherwise verify the materials provided to us, nor will we provide any assurances concerning the reliability, accuracy or completeness of any materials provided by the Company, the Company's management or any other party, and our Services cannot be relied upon to disclose errors or fraud should they exist. We have no responsibility for updating our Services.

## Term

This Agreement shall remain in full force and effect in accordance with its terms and conditions and shall constitute legal, valid, binding, and enforceable obligations of both Grant Thornton and the Company until terminated by either party in accordance with the termination provision set forth in Attachment A.

## Other Matters

This Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute one and the same agreement. This Agreement may be executed and delivered by either party by electronic transmission. For purposes of this Agreement, any signature page signed and transmitted electronically shall be treated as an original document, and the signature of any party thereon, for purposes hereof, shall be considered as an original signature and the document transmitted electronically shall be considered to have the same binding effect as an original signature on an original document.

The Services to be provided by Grant Thornton will not constitute (a) a fairness or solvency opinion or (b) a compilation, examination, review or audit of any of the entity's information, financial or otherwise, historical or prospective, as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants and the Public Company Accounting Oversight Board. In addition, we will not make any predictions or provide any opinions or other assurances concerning the

© Grant Thornton LLP | All rights reserved
U.S. member firm of Grant Thornton International Ltd



Agilon Energy Holdings II LLC
Agreement Dated: June 28, 2021

Page 3 of 10

outcomes of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. Additionally, we do not provide any legal advice.

The Company recognizes and acknowledges that by performing the Services set forth in this Agreement, Grant Thornton is not acting in any management capacity and that the Company has not asked Grant Thornton to make, nor has Grant Thornton agreed to make, any business decisions on behalf of the Company. All decisions about the business of the Company remain the sole responsibility of the Company. By the Company signing this Agreement, the Company expressly acknowledges that Grant Thornton does not guarantee, warrant, or otherwise provide any assurances of any particular outcome of the Case or this engagement, including but not limited to any assurance that the Company will restructure successfully.

Please confirm your acceptance of this Agreement by signing below, signing the enclosed Statement(s) of Work, and returning the signed Agreement. We look forward to the opportunity to serve you.

Very truly yours,

**GRANT THORNTON LLP**

*Loretta R. Cross*
Loretta R. Cross
Managing Director

Enclosures:
Attachment A
Statement(s) of Work

**Agreed and Accepted**

The forgoing letter, Attachment A and the attached Statement(s) of Work, if applicable, fully describe our understanding and are accepted by us.

**Agilon Energy Holdings II LLC**

By: _____*Hugh Smith*_____   Date: __7-2-2021__
Mr. Hugh Smith, Manager of
Agilon Energy Holdings II LLC

© Grant Thornton LLP | All rights reserved
U.S. member firm of Grant Thornton International Ltd



Agilon Energy Holdings II LLC
Agreement Dated: June 28, 2021

Page 4 of 10

## ATTACHMENT A
## STANDARD GRANT THORNTON LLP ENGAGEMENT TERMS
## FOR IN-COURT ADVISORY SERVICES

It is understood and agreed that the terms and conditions in this Attachment A refer to the Grant Thornton letter to which it is attached. The addressee of the letter, by signing the letter, has agreed to all of the terms and conditions in this Attachment A. In the event that there is a conflict between this Attachment A and the letter, including any Statements of Work, attachments, or amendments to the Agreement, the terms of Attachment A shall control.  Any capitalized terms in this Attachment A that are not defined shall have the meanings in the letter.

1. <u>Management Participation and Responsibilities</u>. You will designate at least one management level individual who possesses the suitable skill, knowledge, experience, judgment, and willingness to be responsible for overseeing the Services on your behalf.  You will be solely responsible for applying independent business judgment with respect to the Services, including without limitation, establishing and monitoring the performance of the Services to ensure the objectives have been met, evaluating the adequacy of the engagement and any recommendations made, exclusively rendering decisions that involve management functions related to the engagement, accepting full responsibility for decisions on implementation or other further course(s) of action, and establishing and maintaining internal controls.  Moreover, you will in all events remain responsible for the care and control of your premises, for all internal books and recordkeeping, for establishing and maintaining effective internal control systems and for all management functions, responsibilities and decisions.

2. <u>Business Risk Allocations</u>. The terms of this Section 2 shall apply regardless of the nature of any claim asserted (including but not limited to contract, statute, tort, strict liability, or any form of negligence, whether by you, Grant Thornton, or others) but such terms shall not apply to the extent finally determined to be contrary to any applicable law.

a) **<u>Limitation of Liability.</u> With respect to the Services and this Agreement generally, the liability of Grant Thornton and its present, future, and former partners, principals, directors, employees, agents and contractors (collectively referred to as the "Grant Thornton Firm") for all claims, including but not limited to the Grant Thornton Firm's own negligence, shall not exceed the fees payable for the portion of the work giving rise to such liability. This limitation shall not apply to the extent that it is finally determined that any claims, losses, or damages are the result of the Grant Thornton Firm's willful misconduct or fraud.**

b) **YOU HEREBY WAIVE, AND IN NO EVENT SHALL THE GRANT THORNTON FIRM BE LIABLE FOR, ANY INDIRECT, SPECIAL, CONSEQUENTIAL, PUNITIVE, INCIDENTAL, OR EXEMPLARY DAMAGES OR LOSS, INCLUDING WITHOUT LIMITATION, ANY LOST PROFITS, TAXES, INTEREST, PENALTIES, LOSS OF SAVINGS, OR LOST BUSINESS OPPORTUNITY.**

c) <u>Indemnity</u>. Debtor shall, upon the receipt of written notice, indemnify, defend, and hold harmless the Grant Thornton Firm from and against any liability, damages, fees, expenses, losses, demands, and costs (including defense costs) associated with any claim arising from or relating to: (i) Debtor's misrepresentations; (ii) false or incomplete information provided to Grant Thornton by Debtor or its agents; or (iii) any third party claims related to the Services provided under this Agreement.  Debtor agrees to reimburse the Grant Thornton Firm for all reasonable expenses, including attorneys' fees and expenses, as they are incurred in connection with the investigation of, preparation for, or defense of, any pending or threatened claim, action, or proceeding arising therefrom, whether or not the Grant Thornton Firm is a party. In no event shall Debtor or its estate have any obligation to indemnify, defend or hold harmless the Grant Thornton Firm for any claim and/or from any liability, damages, fees, expenses, losses, demands, and costs (including defense costs) arising from the Grant Thornton Firm's gross negligence, willful misconduct or fraud. If before the entry of an order closing the Debtor's chapter 11 case, the Grant Thornton Firm believes it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification under the engagement letters, as modified by this Order, including without limitation the advanced of defense costs, the Grant Thornton Firm must file an application

© Grant Thornton LLP | All rights reserved
U.S. member firm of Grant Thornton International Ltd



Agilon Energy Holdings II LLC
Agreement Dated: June 28, 2021

Page 5 of 10

therefor in this Court, and the Debtor may not pay any such amounts to the Grant Thornton Firm before the entry of a final order approving such payment. This paragraph is intended only to specify the period during which the Court shall have jurisdiction over any request by Grant Thornton for indemnification and is not a provision limiting the duration of the Debtor's obligation to indemnify. The Debtor shall have no obligation to indemnify the Grant Thornton Firm or provide contribution or reimbursement to the Grant Thornton Firm for a contractual dispute to the extent such indemnification, contribution, or reimbursement would be inconsistent with In re United Artists Theatre Co., 315 F.3d 217, 234 (3d Cir. 2003).

In responding to any claim asserted, the Grant Thornton Firm shall avail itself of any defense available to it under applicable law, but in no event shall the aggregate liability of the Grant Thornton Firm for any claims, losses or damages related to this Agreement exceed an amount that is proportional to the relative fault of the Grant Thornton Firm that is finally determined to have caused your losses.

d) <u>Limitation on Period to File Claims</u>. It is expressly agreed that any claim by or on behalf of either party arising out of the Services, whether it be in contract, tort, or otherwise, shall be deemed waived if a claim is asserted more than two (2) years from the date that the Deliverable is issued.

3. <u>Use of Documentation and Reliance</u>. In accordance with professional standards, the working papers for the Services are the property of Grant Thornton and constitute confidential information. The working papers shall mean all items prepared by Grant Thornton solely for purposes of the applicable Statement of Work to substantiate the work being performed hereunder. Grant Thornton acknowledges that it has a responsibility to retain the working papers for a period of time sufficient to satisfy any applicable legal or regulatory requirements for records retention.

Except for filings with state or federal tax authorities on tax matters, all data, materials, deliverables and reports, and opinions delivered to you (the "Deliverables") are prepared solely for the internal use of Client's management, employees and board of directors. You agree to protect all Deliverables from unauthorized use and prevent disclosure of the Deliverables to unauthorized third parties who may rely on them. Taxing jurisdictions are not considered third parties with respect to tax filings contemplated in a Statement of Work.

Moreover, you agree that we have not and shall not be deemed to assume any duties or obligations to any third party, including without limitation an affiliate, subsidiary, parent company or shareholders, partners, members, creditors or any third party beneficiaries. In the event that one of your affiliates not bound by you to this Agreement desires Grant Thornton's services, such affiliate may execute a Statement of Work which binds it to the terms of this Agreement.

Our Deliverables will be based on our interpretation of the federal and state laws, regulations, administrative and judicial pronouncements, and other relevant authorities, in effect when we provide our deliverables. All of these authorities are subject to change, and such change may be retroactive or prospective in effect. We assume no responsibility to either advise you of, or to update our conclusions, for changes in respect to federal and state laws, regulations, administrative and judicial pronouncements, and other relevant authorities expressly set forth in this Agreement and applicable law.

Grant Thornton shall retain sole and exclusive ownership of and all right, title, and interest in and to any know-how, concepts, techniques, methodologies, ideas, processes, models, templates, tools, utilities, routines, and trade secrets that (i) existed prior to, or were developed independent of, this engagement or (ii) may have been discovered, created, or developed by Grant Thornton as a result of its own efforts during this engagement, which are of general application and do not contain Client's Confidential Information (collectively, the "Grant Thornton Property"). Client shall acquire no right to or interest in the Grant Thornton Property, except for a non-exclusive, non-transferable, royalty-free right to use such Grant Thornton Property solely in connection with Client's permitted use of the Deliverables to the extent any Grant Thornton Property is incorporated therein. Client will not sublicense or otherwise grant any other party any rights to use, copy, or otherwise exploit or create derivative works from the Grant Thornton Property.

4. <u>Third Party Proceedings</u>. Unless expressly provided for in a Statement of Work, our Services do not include giving testimony or appearing or participating in discovery proceedings, in administrative hearings, in court, or in other legal or regulatory inquiries or proceedings. Moreover, our costs, expenses and time spent in legal and regulatory matters or proceedings arising from this Agreement to which we are not a party and the Services are not at issue, such as subpoenas, testimony, bankruptcy filings or proceedings, consultation involving private litigation, arbitration, government or industry

© Grant Thornton LLP | All rights reserved
U.S. member firm of Grant Thornton International Ltd



Agilon Energy Holdings II LLC
Agreement Dated: June 28, 2021

Page 6 of 10

regulation inquiries, whether made at your request or the request of a third party or by subpoena or equivalent, will be billed to you separately at our then current rates.

5.  <u>Access to Resources and Information</u>. Unless specified in a Statement of Work as the responsibility of Grant Thornton to provide, you shall have obtained for us on a timely basis any internal and third party permissions, licenses or approvals that are required for us to perform the Services contemplated hereunder (including use of any necessary software or data). You shall also provide us, on a timely basis, with such information, approvals and assistance as may be necessary to our work or as we may reasonably request, and our personnel assigned to any work hereunder shall not be assumed or deemed to have knowledge of information provided to others, whether external to or within the Grant Thornton Firm.

6.  <u>Term and Termination</u>. This Agreement will commence on the Effective Date and it will not expire, unless earlier terminated as provided in this Attachment A. We shall each have the right to terminate this Agreement, in whole or in part, at any time without further obligation to the other by giving not less than thirty (30) days written notice to the other party; provided that in-process Statements of Work shall be completed, except in the event of an uncured, material breach. Further, Grant Thornton shall have the right to terminate this Agreement if it discovers practices by you that we deem dishonest, fraudulent, or illegal; or we determine that the American Institute of Certified Public Accountants, Public Company Accounting Oversight Board, Securities and Exchange Commission, or other applicable rules or professional standards result in the Grant Thornton Firm's inability to complete the work, the Grant Thornton Firm may terminate the applicable Statement of Work or this Agreement. In the event that either party terminates this Agreement or any or all Statements of Work as set forth in this section, you agree to pay us for the Services, including out-of-pocket expenses and costs, rendered up to the date of such termination, except for a termination caused by Grant Thornton's uncured material breach.

7.  <u>Use of Third Party Service Providers and Affiliates</u>. Grant Thornton LLP is the U.S. member firm of Grant Thornton International Ltd ("GTIL"), a global organization of member firms in over 110 countries. Member firms are neither members of one international partnership nor otherwise legal partners with one another. There is no common ownership, control, governance, or agency relationship among member firms. Services are delivered by the member firms. GTIL does not provide services to clients. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions.

Grant Thornton may use third party service providers, such as independent contractors, specialists, or vendors, to assist in providing the Services. Grant Thornton may also use GTIL member firms, affiliates (including the GT US Shared Services Center India Private Limited ("GTSSC") and/or the Grant Thornton Knowledge and Capability Center India Private Limited ("KCC"), affiliates of Grant Thornton located in Bengaluru (Bangalore), India, or other accounting firms. Such entities may be located within or outside the United States. In the event that you desire the services of GTIL member firms or affiliates of Grant Thornton LLP, we will seek your prior written consent before subcontracting the Services to them by specifying such third party service providers in the applicable SOW or otherwise. Such GTIL member firms and affiliates of Grant Thornton LLP shall receive the benefit of the protections in this Agreement, including without limitation this Attachment A. In the event Grant Thornton subcontracts some of the Services to a GTIL member firm, Grant Thornton takes sole responsibility for all work performed in relation to the applicable SOW and Client agrees that, with respect to work that is the subject of the SOW, its sole recourse is against Grant Thornton.

Additionally, Grant Thornton may use third parties to provide administrative and operational support to Grant Thornton business operations. All of these third-party service providers are subject to confidentiality obligations to protect the confidentiality of client data. Such entities may be located within or outside the United States.

8.  <u>Electronic Communications</u>. During the course of our engagement, we may need to electronically transmit confidential information to each other and to third-party service providers or other entities engaged by either Grant Thornton or you. Electronic methods include telephones, cell phones, e-mail, cloud services and fax. These technologies provide a fast and convenient way to communicate. However, all forms of electronic communication have inherent security weaknesses, and the risk of compromised confidentiality cannot be eliminated. You agree to the use of electronic methods to transmit and receive information, including confidential information and accept the risk of doing so.

Grant Thornton shall not be responsible for any (i) service interruptions of or (ii) corruption or damages to the Client's or third party's information systems and the information and data contained therein, including but not limited to denial of access, and automatic shut-down of information systems caused by or resulting from Grant Thornton's performance of the Services.

© Grant Thornton LLP | All rights reserved
U.S. member firm of Grant Thornton International Ltd



Agilon Energy Holdings II LLC
Agreement Dated: June 28, 2021

Page 7 of 10

9. _Privacy_. Grant Thornton is committed to protecting personal information. We will maintain such information in confidence in accordance with professional standards and governing laws. Therefore, any personal information provided to us by the Company will be kept confidential and not disclosed to any third party unless expressly permitted by the Company or required by law, regulation, legal process, or professional standards. The Company is responsible for obtaining, pursuant to law or regulation, consents from parties that provided the Company with their personal information, which will be obtained, used, and disclosed by Grant Thornton for its required purposes.

Notwithstanding anything to the contrary herein, Grant Thornton imposes no conditions of confidentiality on any information it provides to you to the extent that it concerns the tax structure or tax treatment of any transaction.

10. _Management Representations_. Our findings, conclusions and recommendations are limited solely to the matters for which we were engaged. No conclusions should be inferred as to any matters not specifically covered in the Agreement. Further, the findings, conclusions, and recommendations are based upon the facts and information presented by you and may be inapplicable if the actual facts differ from those presented in any respect.

You represent that we may rely on the following, to the extent applicable, without verification:

a) All original documents, signatures and copies of documents provided by you are authentic.

b) When only drafts of pertinent documents are available, the executed versions of the draft documents will not vary materially from the ones provided by you for examination.

c) There are no inconsistent or adverse facts that are not otherwise provided by you and not apparent from the face of the documents that we have relied upon.

d) All legal documents necessary to perform the services have been duly and validly authorized, approved and executed by the appropriate persons.

e) To the extent that you provide us with reports from licensed environmental engineers or other licensed professional service providers, you authorize us to rely upon such reports in performing our Services.

With respect to (a) – (e) above, you hereby agree not to sue the Grant Thornton Firm and release the Grant Thornton Firm from all claims, whether known or unknown, liability, damages, fees, expenses and costs (including defense costs) relating to the Services that arise or relate to any information provided by you, your personnel or agents, that is misleading, incomplete, or not current.

11. _Standards of Performance_. We will perform our Services in conformity with the terms expressly set forth in each Statement of Work, including all applicable professional standards. Accordingly, our Services shall be evaluated solely on our substantial conformance with such terms and standards expressly set forth in the Statement of Work and applicable law.

12. _Dispute Resolution_.

(a) Mediation. Any controversy or claim arising out of or relating to the services, related fees or this Agreement shall first be submitted to mediation.  A mediator will be selected by agreement of the parties, or if the parties cannot agree, a mediator acceptable to all parties will be appointed by the American Arbitration Association ("AAA").  The mediation will proceed in accordance with the customary practice of mediation and shall be concluded within sixty (60) days from receipt of written notice unless the parties agree otherwise. Any facts disclosed related to the mediation shall be kept confidential and each side shall pay its own costs of the mediation but will share equally the mediator's expenses.

(b) Arbitration.  In the event mediation is not successful, then the parties agree that the dispute(s) or claim(s) shall be settled by binding arbitration. The provisions herein supersede any contrary arbitral rules that might otherwise apply. The arbitration proceeding shall take place in the city in which the Grant Thornton office providing the Services is located unless the parties mutually agree to a different location. If the Services that are at issue are provided from various Grant Thornton offices, the arbitration will take place in Chicago, Illinois. The proceeding shall be governed by the provisions of the Federal Arbitration Act ("FAA") and will proceed in accordance with the then current Conflict Prevention & Resolution ("CPR") or the similar rules of another arbitration association if one other than CPR is selected, except that pre-hearing discovery shall be limited as provided for herein or unless specifically authorized by the arbitrators.

© Grant Thornton LLP | All rights reserved
U.S. member firm of Grant Thornton International Ltd



Agilon Energy Holdings II LLC
Agreement Dated: June 28, 2021

Page 8 of 10

i. To begin the arbitration process, a party shall provide written notice of the issues to be resolved by arbitration (the "Notice") within fifteen (15) days of the parties' agreement to terminate or waive mediation, and the other party shall respond within twenty one (21) days and shall add any other issues to be resolved within the arbitration. The arbitrators shall only resolve those issues identified in the Notice, and issues that are not identified in the Notice shall not be arbitrated nor brought to court.

ii. The arbitration shall be conducted by three (3) arbitrators. Each party shall select an arbitrator experienced in the relevant subject matters within twenty one (21) days of the Notice who shall serve as a neutral arbitrator, and the two (2) designated arbitrators shall then select a third neutral arbitrator within twenty one (21) days of their selection by the parties. It is the parties' intention that the two (2) arbitrators selected by the parties be "neutrals" who will not be informed as to which party selected them. If the two (2) arbitrators cannot agree on selection of a third arbitrator within twenty one (21) days of their appointment, the agency whose rules govern the arbitration shall request a list of arbitrators and select a third arbitrator under the agency's rules within thirty (30) days. If both parties are in agreement, the dispute may be heard by one (1) arbitrator selected within sixty (60) days following receipt of the Notice.

iii. The parties shall not be entitled to discovery except as it directly relates to the underlying Services that are at issue between the parties and shall submit a joint proposed schedule to the arbitrator(s) within thirty (30) days of the arbitrator(s)' selection. Other than described herein, no other discovery is allowed except by the arbitrator(s) and only for good cause shown.

iv. Except for impeachment-only information, each party must disclose within thirty (30) days after the selection of the arbitrator(s): (1) the names, addresses, telephone numbers, and email addresses of persons who have knowledge and/or discoverable information relating to the issues submitted for resolution, its claims and defenses; and (2) a computation showing each element of claimed damages.

v. The parties shall be entitled to take three (3) depositions not to exceed seven (7) hours for each such deposition. In addition, each side shall be entitled to depose any expert witness who will testify in the arbitration proceeding for no more than seven (7) hours. Each testifying expert shall provide the same materials required under Federal Rule of Civil Procedure 26(a)(2)(B). The parties must confer in good faith to resolve all discovery disputes. If they cannot resolve these themselves, the parties must attempt to do so in conference with the arbitrator(s). If the dispute is not resolved in conference, the arbitrator(s) must promptly rule on the issues. Each side may file dispositive motions without obtaining leave from the arbitrator(s), but must first confer with the other side prior to filing any dispositive motions. All motions should be filed no later than sixty (60) days prior to the arbitration hearing, unless agreed otherwise by the parties or ordered by the arbitrator(s).

vi. The arbitrator(s) shall have no authority to award non-monetary equitable relief and will not have the right to award indirect, consequential, or punitive damages. The award of the arbitration shall be in writing and shall be accompanied by a well-reasoned opinion. The award issued by the arbitrator(s) may be confirmed in a judgment by any federal or state court of competent jurisdiction. Each party shall be responsible for its own costs associated with the arbitration, except that the costs of the arbitrator(s) shall be equally divided by each side involved in the arbitration. The arbitration proceeding and all information disclosed during the arbitration shall be maintained as confidential, except as may be required to confirm the award, for disclosure to professional or regulatory bodies, as required by law or a court of law, or in a related confidential mediation or arbitration.

13. <u>General</u>.

a) Neither party shall assign any rights, obligations or claims relating to this Agreement.

b) Neither party shall be liable for any delay or failure in performance due to circumstances beyond its reasonable control.

c) Except for GTIL member firms and Grant Thornton affiliates, no third-party beneficiaries are intended under this Agreement.

d) Neither party shall use the other's name, service marks, or trademarks without prior written consent.

e) This Agreement, including its formation and the parties' respective rights and duties and all disputes that might arise from or in connection with this Agreement or its subject matter, shall be governed by and construed in accordance with

© Grant Thornton LLP | All rights reserved
U.S. member firm of Grant Thornton International Ltd



Agilon Energy Holdings II LLC
Agreement Dated: June 28, 2021

Page 9 of 10

| | |
|---|---|
| | the laws of Illinois, without giving effect to conflicts of laws rules. The parties consent to the personal jurisdiction of the courts of the state where the Grant Thornton office performing the Services is located and the United States District Court for the District of such state, and the parties waive objection to venue in any of these courts. |
| f) | Each party is an independent contractor with respect to the other and shall not be construed as having a trustee, joint venture, agency or fiduciary relationship. |
| g) | If any portion of this Agreement is held invalid, it is agreed that such invalidity shall not affect any of the remaining portions. If because of a change in the Client's status or due to any other reason, any provision in this Agreement would be prohibited by laws, regulations, or published interpretations by governmental bodies, commissions, state boards of accountancy, or other regulatory agencies, such provision shall, to that extent, be of no further force and effect, and the Agreement shall consist of the remaining portions. |
| h) | This Agreement, including any other incorporated attachments, sets forth the entire understanding between and among the parties regarding the Services and supersedes all prior and contemporaneous agreements, arrangements and communications and may not be modified or amended, except by the mutual written agreement of both parties that references and is incorporated into this Agreement. No "click-through," "shrink-wrap," "browse-wrap", similar agreements or other terms, whether before, on, or after the date of this Agreement, will be effective to add to or modify the terms of this Agreement or alter the relationship of the parties, regardless of any party's (or its personnel's) acceptance of or agreement to such terms by electronic or other means. |
| i) | The clauses regarding liability limitations, third party proceedings, indemnification and resolution of differences shall survive any termination of this Agreement. |

14. <u>Personnel</u>.

| | |
|---|---|
| a) | The Client acknowledges that hiring Grant Thornton (or GTIL) personnel participating on an engagement may be perceived as compromising our objectivity, and if applicable, impairing our independence. Accordingly, prior to entering into any employment discussions with such personnel, you agree to discuss the potential employment, including any applicable independence ramifications, with the engagement partner responsible for the Services. |
| b) | In addition, during the term of this Agreement and for a period of one (1) year after the Services are completed, we both agree not to solicit, directly or indirectly, or hire, the other's personnel participating on an engagement without express written consent. If this provision is violated, the violating party will pay the other party a fee equal to the hired person's annual salary in effect at the time of the violation to reimburse the estimated costs of hiring and training replacement personnel, unless the individual is hired in response to a general advertisement made available to the public. |

15. <u>Successors and Affiliates</u>. Recognizing that at times Grant Thornton's work may pertain not only to you but also to various subsidiaries, affiliates, advisors and contractors, partnerships, companies, trusts or foundations, you agree, as may be requested by Grant Thornton from time to time (including subsequent to completion of the Services), to obtain written acceptance of the terms of this Agreement. Furthermore, you represent and warrant that this Agreement shall be binding on each party hereto and on each of your respective subsidiaries, successors, assigns and legal representatives.

16. <u>Reportable Transactions</u>.  Taxpayers are required to disclose their participation in certain types of transactions ("Reportable Transactions") on forms filed with their federal income tax returns and/or with the IRS Office of Tax Shelter Analysis, and with agencies of certain states that impose similar requirements.  Failure to adhere to Reportable Transaction disclosure and filing requirements may result in the imposition of significant penalties under applicable federal and/or state law.  We may be a "Material Advisor" with regard to Services provided to you and we may be subject to our own federal and/or state reporting, registration and list maintenance obligations, which are separate and independent of any taxpayer disclosure obligation.  We may be required to maintain and disclose to applicable federal and/or state regulatory agencies certain information regarding your participation in a Reportable Transaction, including your name and federal identification number, and other information as required.

Except as specifically stated in this Agreement, Grant Thornton does not assume any obligation to express any opinion on, provide any advice related to, or identify from any information provided by you or obtained by us during the course of providing Services to you under this Agreement, whether any particular transaction is a Reportable Transaction or the potential consequences of non-compliance with disclosure and filing requirements pertaining to a Reportable Transaction.  Reliance on any opinion or advice we may provide regarding whether a transaction is or is not a Reportable Transaction and /or any

© Grant Thornton LLP | All rights reserved
U.S. member firm of Grant Thornton International Ltd



disclosure and filing requirements may not avoid the imposition of any penalty imposed on you under federal or state law for the failure to comply with such disclosure and filing obligations.

17.     <u>Privileges Relating to Taxpayer Communications</u>.  Any advice given by Grant Thornton with respect to a matter that is within the scope of our authority to practice before the IRS may be privileged under federal and state laws. This privilege may be asserted in any non-criminal tax matter before the IRS and in any non-criminal tax proceeding in Federal court and may be asserted to the extent such communication would be considered privileged communication if it were between a taxpayer and an attorney. At your sole cost and expense, we will cooperate with your efforts to assert taxpayer privileges when we receive a demand or inquiry for your information to the extent required by law.

© Grant Thornton LLP | All rights reserved
U.S. member firm of Grant Thornton International Ltd