IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| AGILON ENERGY HOLDINGS II LLC, *et al.* | § § | Case No. 21-32156 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |

**DEBTORS' APPLICATION FOR ORDER AUTHORIZING THE RETENTION OF HUGH SMITH ADVISORS LLC AND TO DESIGNATE HUGH SMITH TO SERVE AS <u>CHIEF RESTRUCTURING OFFICER AND RELATED SERVICES</u>**

> **This application seeks an order that may adversely affect you. If you oppose the application, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the application should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the application and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the application at the hearing.**
>
> **Represented parties should act through their attorney.**

To the Honorable Marvin Isgur,
United States Bankruptcy Judge:

      Agilon Energy Holdings II LLC, Victoria Port Power LLC, and Victoria City Power LLC (collectively, the "***Debtors***"), file this *Application for Order Authorizing the Retention of Hugh Smith Advisors LLC and to Designate Hugh Smith to Serve as Chief Restructuring Officer and Related Services* (the "***Application***"). In support of this Application, the Debtors respectfully state:

---

[1] The debtors and debtors in possession in these Chapter 11 Cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Agilon Energy Holdings II LLC (3389) ("***Agilon***"), Case No. 21-32156; Victoria Port Power LLC (4894) ("***VPP***"), Case No. 21-32157; and Victoria City Power LLC (4169) ("***VCP***" and together with Agilon and VPP, the "***Debtors***"), Case No. 21-32158. The Debtors' mailing address is: 5850 San Felipe, Ste 601, Houston, Texas 77057.

1

**Summary of Relief Requested**

1. The Debtors seek authority to retain Hugh Smith Advisors LLC ("**HSA**") to provide chief restructuring services and designate Hugh Smith ("**Mr. Smith**") as Chief Restructuring Officer, effective as of the Petition Date (defined below), subject to further order of the Court and in accordance with the terms and conditions set forth in that certain engagement agreement, dated June 27, 2021, between HSA and the Debtors (the "**Engagement Agreement**").

2. The relief requested in this Application is supported by the *Declaration of Hugh Smith in Support of Debtors' Application for Order Authorizing the Retention of Hugh Smith Advisors LLC and to Designate Hugh Smith to Serve as Chief Restructuring Officer and Related Services* (the "**Smith Declaration**") attached to this Application as **Exhibit A**. A true and correct copy of the Engagement Agreement is attached as **Exhibit 1** to the Smith Declaration.

**Jurisdiction and Venue**

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the relief requested are Bankruptcy Code sections 105(a), 327(a), 328, 330, 1107, and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"),

rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules.

## Background

6. On June 27, 2021 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

7. The Debtors continue in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On June 28, 2021, the Court entered an order [Docket No. 5] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

8. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. No statutory committee has been appointed in these Chapter 11 Cases.

9. Additional information regarding the Debtors, including their business operations, corporate and capital structure, and the events leading to the Petition Date, is more fully set forth in the *Declaration of Hugh Smith in Support of Chapter 11 Petitions, First Day Motions, and Debtors' Emergency Motion for Entry of an Order (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. 364, (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363 and 364, and (IV) Granting Related Relief* (the "**First Day Declaration**"). [Docket No. 42].

## Mr. Smith's Qualifications

10. Mr. Smith is an accomplished energy industry leader with over 40 years of experience backed by a proven track record in organizational leadership, power plant construction

and operations, renewable power generation development, integrated resource planning, environmental/regulatory affairs, asset management, and risk management. Mr. Smith's resume is attached to this Application as **Exhibit B** and incorporated herein.

11. In December 2020, Mr. Smith was engaged by the Debtors as an independent contractor to explore options with the Debtors and their senior lenders to restructure their debt. During that time Mr. Smith worked with the Debtors' then management in exploring possible solutions to the Debtors' financial problems, including a possible restructuring of the outstanding debt agreements. As a result of his prepetition engagement, Mr. Smith was able to become initially familiar with the Debtors' financial affairs, debt structure, business operations, capital structure, key stakeholders, and related matters.

12. The Debtors believe that HSA has developed significant, relevant experience and expertise regarding the Debtors and their operations and assets, making HSA both well qualified and uniquely situated to provide the services required by the Debtors in these Chapter 11 Cases.

13. The Debtors propose to retain HSA to provide chief restructuring services and designate Mr. Smith as Chief Restructuring Officer postpetition in accordance with the terms set out in the Engagement Agreement.

## Services to be Provided

14. The Debtors request entry of an order authorizing the retention of HSA and to designate Mr. Smith to serve as the Debtors' CRO and provide related services. In his capacity as CRO, Mr. Smith's duties are proposed to be those customarily performed by individuals holding similar executive positions.

15. Subject to Bankruptcy Court approval, consistent with the Engagement Agreement, HSA will provide the following restructuring and management services, without limitation:

i. Oversee and direct the operation of the Debtors, including without limitation, being designated as an authorized signatory for the Debtors to execute all documents and agreements on behalf of the Debtors;

ii. Oversee and direct all activities required to bring the Debtors' generation units into production;

iii. Oversee and direct the preparation of all financial information;

iv. Oversee and direct the development of short-term cash management procedures and liquidity forecasting, including developing and maintaining cash flow forecast and budgets delivered to the lender under any of the Debtors' post-petition debtor-in-possession financing facilities (the "***DIP Facility***");

v. Approve all material cash disbursements, in coordination with the Debtors' obligations under the DIP Facility, in order to maximize, protect, and preserve the assets of the Debtors;

vi. Oversee and direct the Debtors' efforts to complete a sale of substantially all of its assets or such other sale or sales consistent with the requirements of the Debtors pursuant to the DIP Facility ("***Sale***");

vii. Consistent with the requirements of the Debtors pursuant to the DIP Facility: oversee and direct the Debtors and their advisors through the Sale process, including due diligence, marketing, discussions and negotiations with potential bidders, seeking Bankruptcy Court approval and filing such other pleadings as may be necessary or desirable in connection with the Sale, any auctions in connection with the Sale, and documenting and closing the Sale;

viii. Oversee and direct the claims reconciliation process, including, without limitation, initiating and pursuing any necessary litigation involving claims filed against the Debtors, and approving or seeking approval, as applicable, of any settlements to be executed by the Debtors' in connection therewith during the pendency of the Chapter 11 Cases;

ix. To the extent necessary and appropriate, attend hearings, meetings, and other events related to the Chapter 11 Cases as the Debtors' representative;

x. Retain or terminate employees, contractors and professionals employed by the Debtors, subject to any required approval by the Bankruptcy Court;

xi. Oversee and direct the preparation of information, including any reports and the schedules needed for the Chapter 11 Cases, and have access to all of the Debtors' controlled materials necessary for such preparation;

 xii. Participate in meetings with third parties and their respective representatives on all material matters related to the Debtors and/or administration of the Chapter 11 Cases;

 xiii. Consistent with the requirements of the Debtors pursuant to the DIP Facility, work with Debtors' advisors with respect to the development, negotiation and filing of any chapter 11 plan, disclosure statement or motion to dismiss or convert the Debtors' Chapter 11 Cases;

 xiv. Provide testimony before the Bankruptcy Court with respect to the foregoing to the extent (a) deemed necessary and appropriate, (b) consistent with the customary role of a chief restructuring officer, (c) consistent with the other provisions of the Engagement Agreement, and (d) consistent with the requirements of the Debtors pursuant to the DIP Facility; and

 xv. Consistent with the requirements of the Debtors pursuant to the DIP Facility, take any and all actions necessary and appropriate to fulfill the CRO's responsibilities set forth above, including executing all necessary documentation on behalf of the Debtors to effectuate the same.

16. Debtors submit that it is necessary to retain HSA pursuant to sections 327 and 328 to serve as their chief restructuring officer and that the retention of HSA for these purposes is appropriate under the circumstances and in the best interest of the estates.

17. The services that have been and are to be provided by HSA are necessary to enable the Debtors to maximize the value of their estates and will be complementary to, and not duplicative of, the services of the Debtors' other professionals. The Debtors believe that, based on all engagement proposals obtained and reviewed, HSA's proposed Compensation Structure, set forth below, is competitive and reasonable given HSA's quality of services, experience and expertise.

### Terms of Engagement

18. HSA's willingness to continue with its engagement and to assist and advise the Debtors with respect to the chief restructuring officer services is contingent on HSA's ability to be

retained in accordance with the terms and conditions of its Engagement Agreement with the Debtors, including the compensation and indemnification provisions of that agreement.

19. HSA intends to apply for compensation for its professional services rendered to the Debtors in these Chapter 11 Cases and reimbursement of the expenses it incurs in connection with those services, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, any applicable guidelines established by the U.S. Trustee, and any other applicable procedures or order of the Court consistent with the proposed compensation set forth in the Engagement Agreement (the "***Compensation Structure***"). Further, because the Debtors are seeking to compensate HSA pursuant to section 328(a) of the Bankruptcy Code, the Debtors believe that HSA's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

20. In summary, subject to approval by the Bankruptcy Court, the Compensation Structure provides for the following:

   a. A fixed monthly payment (the "***Fixed Payment***") of $35,000 per month, paid monthly in arrears and deposited directly into HSA's designated bank account unless it advises the Debtors that it wishes to be paid by check.

   b. Reimbursement of all expenses incurred by HSA for its activities under the Engagement Agreement, including without limitation, airfare, lodging, meals communications.

   c. In the event that any Eligible Sale Transaction (as defined in the Engagement Agreement) occurs during the Term (as defined in the Engagement Agreement) or within three (3) months immediately after the end of the Term, unless the Term is terminated by the Debtors for cause or voluntarily by HSA (the "***Sale Closing***"), the Debtors shall pay to Smith from the proceeds of the Sale Closing, an amount (the "***Sale Payment***") equal to (i) $75,000; plus (ii) 0.325% of Proceeds (as defined in the Engagement Agreement).

   d. All compensation is subject to final approval of the Bankruptcy Court.

21. HSA does not customarily maintain detailed time records similar to those customarily maintained by attorneys because, with the exception of participation in judicial proceedings as outlined above, HSA's services will not be compensated on an hourly basis, but rather through certain fixed fees.

22. The Debtors believe that the Compensation Structure is reasonable and comparable to compensation generally charged by chief restructuring officers of similar stature and for comparable engagements, both in and out of bankruptcy proceedings. The proposed Compensation Structure takes into consideration the hours worked, results achieved, and the ultimate benefit to the Debtors' estates from the work performed by HSA during this engagement, as well as the difficulty and complexity of the engagement.

23. Further, the Compensation Structure is consistent with Mr. Smith's normal and customary billing practices for engagements of this size and complexity. The Debtors believe that the ultimate benefit of HSA's services cannot be measured by simple reference to the number of hours worked by HSA on this engagement. Accordingly, the Debtors believe that the proposed Compensation Structure is both reasonable and market-based.

24. HSA and Mr. Smith received payments totaling $57,641.68 in compensation and expense reimbursement prior to the Petition Date. Prior to the Petition Date, HSA agreed to waive outstanding amounts owed by the Debtors in the amount of $76,750.00. HSA and Mr. Smith agree and confirm that such amount was waived prior to the Petition Date.

25. As a material part of the consideration for which HSA has agreed to provide the services herein, pursuant to the Engagement Agreement, the Debtors have agreed to indemnify and hold HSA harmless under the circumstances as set forth in the Engagement Agreement.

26. The Debtors believe that the indemnity provisions are reasonable terms and conditions of HSA's engagement and were, along with all of the terms of the Engagement Agreement, negotiated at arm's length and in good faith with the Debtors' secured lenders with input from the Debtors' proposed financial advisor Grant Thornton, LLP. HSA and the Debtors believe that the indemnity provisions are comparable to indemnification provisions generally obtained in comparable engagements, both in and out of court. The Debtors respectfully submit that the indemnification provisions contained in the Engagement Agreement, viewed in conjunction with the other terms of HSA's proposed retention are reasonable and in the best interest of the Debtors, their estates and creditors.

### **Disinterestedness**

27. To the best of the Debtors' knowledge, HSA (a) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code as required by section 327 of the Bankruptcy Code, as modified by sections 328(c) and 1107(b) of the Bankruptcy Code, (b) does not hold or represent an interest adverse to the Debtors or their estates with respect to matters as to which HSA is to be retained, and (c) has no connection to the Debtors, their creditors or related parties.

28. Specifically, as represented in the Smith Declaration, neither HSA nor Mr. Smith within two years before the date of the filing of these Chapter 11 Cases, were creditors, equity security holders, insiders or employees of the Debtors. In addition, as set forth in the Smith Declaration:

   a. HSA, its members and employees are not and were not, within two years before the date of the filing of these Chapter 11 Cases, creditors, equity security holders, insiders or employees of the Debtors;

   b. HSA will not employ any past or present employees of the Debtors in connection with its work as the CRO in these Chapter 11 Cases; and

9

c. In its capacity as CRO in these Chapter 11 Cases, HSA will not intentionally misrepresent any fact to any person.

29. HSA has reviewed its records to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Smith Declaration, HSA has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be retained.

30. In addition, as set forth in the Smith Declaration, if any new material facts or relationships are discovered or arise, HSA will provide the Court with a supplemental declaration.

**Applicable Authority**

31. The Debtors submit that the retention of HSA under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

(a) is not a creditor, an equity security holder, or an insider;

(b) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

32. Section 328(a) of the Bankruptcy Code authorizes the retention of a professional person "on any reasonable terms and conditions of employment . . . ." 11 U.S.C. § 328(a). The Debtors submit that the terms and conditions of HSA's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since Debtors will require substantial assistance with the reorganization process, it is reasonable for Debtors to seek to retain HSA to provide chief restructuring officer services and designate Mr. Smith as Chief Restructuring Officer on the terms and conditions set forth herein and in the Engagement Agreement.

### Notice

33. Notice of this Application has been provided to: (i) the Office of the United States Trustee; (ii) those persons who have formally appeared and requested notice of service in this proceeding pursuant to Bankruptcy Rules 2002; (iii) counsel for and the members of any committees appointed by this Court; (iv) counsel for the Debtors' first-lien prepetition lender and proposed debtor-in-possession credit facility; (v) the thirty (30) largest unsecured creditors of the Debtors; (vi) governmental agencies having a regulatory or statutory interest in these cases; and (vii) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(m). A copy of this Application is also available on the website of the Debtors' notice and claims agent at http://cases.stretto.com/agilonenergy. In light of the nature of the relief requested, and the exigent circumstances of these cases, the Debtors submit that no further notice is necessary.

The Debtors respectfully request that the Court (i) enter a proposed order in substantially the same form as that submitted with this Application granting the relief requested herein and approving Hugh Smith Advisors LLC's retention to provide chief restructuring services

anddesignate Mr. Smith as Chief Restructuring Officer to the Debtors in these Chapter 11 Cases and (ii) provide such other relief as the Court deems appropriate and just.

    Respectfully submitted,

    */s/ Simon R. Mayer*
    Elizabeth M. Guffy
    Texas Bar No. 08592525
    Simon R. Mayer
    Texas Bar No. 24060243
    **LOCKE LORD LLP**
    600 Travis St., Suite 2800
    Houston, TX 77002
    Telephone: (713) 226-1200
    Facsimile: (713) 223-3717
    Email: eguffy@lockelord.com
           simon.mayer@lockelord.com

    ***Proposed Attorneys for***
    ***Agilon Energy Holdings II LLC, et al.***

## Certificate of Service

The undersigned certifies that this Application was served electronically on July 27, 2021 via ECF on those parties registered to receive ECF service in these Chapter 11 Cases.

    */s/ Simon R. Mayer*
    Simon R. Mayer