**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **AGILON ENERGY HOLDINGS II LLC,** *et al.* | § § | **Case No. 21-32156 (MI)** |
| **Debtors.**[1] | § § § | **(Jointly Administered)** |

**ORDER AUTHORIZING THE DEBTORS TO RETAIN**
**HUGH SMITH ADVISORS LLC AND TO DESIGNATE HUGH SMITH**
**TO SERVE AS CHIEF RESTRUCTURING OFFICER AND RELATED SERVICES**
**EFFECTIVE AS OF JUNE 27, 2021**
(Related to Docket No. ___)

Upon the application (the "***Application***")[2] of the debtors in possession in the above-captioned case (collectively, the "***Debtors***") for an order (this "***Order***") pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "***Bankruptcy Code***"), authorizing the Debtors to retain Hugh Smith Advisors LLC ("***HSA***") to provide chief restructuring services and designate Hugh Smith ("***Mr. Smith***") as Chief Restructuring Officer, effective as of the Petition Date, on the terms set forth in the engagement letter (the "***Engagement Agreement***") attached hereto as **Exhibit 1**; and upon the *Declaration of Hugh Smith in Support of Debtors' Application for Order Authorizing the Retention of Hugh Smith Advisors LLC and to Designate Hugh Smith to Serve as Chief Restructuring Officer and Related Services* (the "***Smith Declaration***") in support of the Application attached to the Application as **Exhibit A**; and due and adequate notice of the Application having been given; and the Court being satisfied that HSA is a "disinterested person"

---

[1] The debtors and debtors in possession in these Chapter 11 Cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Agilon Energy Holdings II LLC (3389) ("***Agilon***"), Case No. 21-32156; Victoria Port Power LLC (4894) ("***VPP***"), Case No. 21-32157; and Victoria City Power  LLC (4169) ("***VCP***" and together with Agilon and VPP, the "***Debtors***"), Case No. 21-32158. The Debtors' mailing address is: 5850 San Felipe, Ste 601, Houston, Texas 77057.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

1

as such term is defined under section 101(14) of the Bankruptcy Code; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by this Application is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

1.      Pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Bankruptcy Local Rule 2014-1, the Debtors are hereby authorized to (i) retain HSA and (ii) designate Hugh Smith as Chief Restructuring Officer, effective as of the Petition Date, in accordance with the terms and conditions set forth in the Engagement Agreement, attached as **Exhibit 1** hereto and as modified by this Order.

2.      The terms of the Engagement Agreement, including without limitation, the compensation provisions and the indemnification provisions, are reasonable terms and conditions of retention and are hereby approved, as modified by this Order.

3.      HSA shall file applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in Bankruptcy Code sections 330 and 331, such Bankruptcy Rules and Local Bankruptcy Rules as may then be applicable, the U.S. Trustee Guidelines, and any applicable orders and procedures of this Court.  HSA shall not be required to submit monthly fee statements pursuant to any interim compensation order in these Chapter 11 Cases, if any.  For billing purposes, HSA will submit monthly invoices providing a description of the work performed during the applicable period and receipts to support any related expenses.  HSA intends to make a reasonable effort to comply with the U.S. Trustee's requests for additional information both in connection with the Application and the interim and final fee applications to be filed by HSA in these Chapter 11 Cases.

4.      Notwithstanding anything to the contrary contained herein, the U.S. Trustee retains all rights to respond or object to HSA's monthly, interim and final applications for compensation and reimbursement of out-of-pocket expenses based on the reasonableness standard in section 330 of the Bankruptcy Code.

5.      Notwithstanding anything in the Application, the Engagement Agreement, the Smith Declaration or any exhibit(s) related thereto to the contrary:

a.  HSA shall not act in any other capacity (for example, and without limitation, as an investment banker, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned cases.

b.  In the event the Debtors seek to have HSA personnel assume executive officer positions that are different than the position(s) disclosed in the Application, or to materially change the terms and scope of the engagement, a motion to modify the retention shall be filed.

c.  No principal, employee or independent contractor of HSA shall serve as a director of any of the above-captioned Debtor(s) during the pendency of the above-captioned cases other than Hugh Smith, solely in connection with his appointment as Chief Restructuring Officer for the Debtors.

d.  Any success fees, transaction fees, or other back end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order.

e.  The Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law.

f.  For a period of three years after the conclusion of the engagement, neither HSA nor any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors.

g.  HSA shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, its/their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

6. To the extent there is inconsistency between the terms of the Engagement Agreement, the Application, and this Order, the terms of this Order shall govern.

7. The following indemnification procedures are approved during the pendency of this case:

      a. As set forth and subject to the limitations in subparagraph (c) below, HSA shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

      b. The Debtors shall have no obligation to indemnify HSA, or provide contribution or reimbursement to HSA, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from HSA's gross negligence, willful misconduct, fraud, breach of fiduciary duty, if any, bad faith or self-dealing, or (ii) settled prior to a judicial determination as to HSA's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which HSA should not receive indemnity, contribution or reimbursement under the terms of the Agreement as modified by this Order; and

      c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, HSA believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Application), including without limitation the advancement of defense costs, HSA must file an application therefore in this Court, and the Debtors may not pay any such amounts to HSA before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by HSA for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify HSA. All parties in interest shall retain the right to object to any demand by HSA for indemnification, contribution or reimbursement. All parties in interest shall retain the right to object to any demand by HSA for indemnification, contribution or reimbursement.

8. In the event that, during the pendency of these cases, HSA seeks reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys

4

shall be included in HSA's fee applications and such invoices and time records shall be in compliance with the Bankruptcy Local Rules, and shall be subject to the U.S. Trustee Guidelines and approval of the Court under the standards of Bankruptcy Code sections 330 and 331, without regard to whether such attorney has been retained under Bankruptcy Code section 327; provided, however, that HSA shall not seek reimbursement from the Debtors' estates for any fees incurred in defending any of HSA's fee applications in these bankruptcy cases.

9.      HSA shall use its best efforts and will coordinate with the Debtors and their other retained professionals, not to duplicate any of the services provided to the Debtors by any of their other retained professionals.

10.      HSA shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and the official committee before any increases in the rates or compensation set forth in the Application or the Engagement Letter are implemented. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

11.      To the extent the Debtors wish to expand the scope of HSA's services beyond those services set forth in the Engagement Agreement or this Order, the Debtors shall be required to seek further approval from this Court.  The Debtors shall file notice of any proposed additional services (the "***Proposed Additional Services***") and any underlying engagement agreement with the Court and serve such notice on the U.S. Trustee, any official committee appointed in these chapter 11 cases, and any party requesting notice under Bankruptcy Rule 2002.  If no such party files an objection within 14 days of the Debtors filing such notice, the Proposed Additional Services and

any underlying engagement agreement may be approved by the Court by further order without further notice or hearing.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

13.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:

_____
Marvin Isgur
United States Bankruptcy Judge

# Exhibit 1

Engagement Agreement

EXECUTION VERSION

## CONSULTING AGREEMENT

This CONSULTING AGREEMENT (this "Consulting Agreement"), dated as of June 27, 2021, is entered into between Agilon Energy Holdings II LLC, a Texas Limited Liability Company; Victoria Port Power LLC, a Texas Limited Liability Company, and Victoria City Power LLC, a Texas Limited Liability Company (collectively, the "Companies") and Hugh Smith Advisors LLC, a Texas Limited Liability Company ("Mr. Smith" and, together with the Companies, the "Parties").

## WITNESSETH

WHEREAS, on June 27, 2021 (the "Petition Date"), each of the Companies voluntarily commenced a chapter 11 case (collectively, the "Chapter 11 Cases") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court");

WHEREAS, in connection with the ongoing operations of the Companies and navigating the Companies through the Bankruptcy process, the Companies wish to secure the services of Mr. Smith as the Chief Restructuring Officer (the "CRO");

WHEREAS, Mr. Smith wishes to render such services to the Companies upon the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

## 1. Engagement by the Companies.

1.1. Subject to the terms of this Consulting Agreement, Mr. Smith shall serve as the Companies' CRO and shall perform such duties consistent with such position, including but not limited to:

(a) oversee and direct the operation of the Companies, including without limitation, being designated as an authorized signatory for the Companies to execute all documents and agreements on behalf of the Companies;

(b) oversee and direct all activities required to bring the Companies' generation units into production;

(c) oversee and direct the preparation of all financial information;

(d) oversee and direct the development of short-term cash management procedures and liquidity forecasting, including developing and maintaining cash flow forecast and budgets delivered to the lender under any of the Companies' post-petition debtor in possession financing facilities (the "DIP Facility");

(e) approve all material cash disbursements, in coordination with the Companies' obligations under the DIP Facility, in order to maximize, protect, and preserve the assets of the Companies;

(f) oversee and direct the Companies' efforts to complete a sale of substantially all of its assets or such other sale or sales consistent with the requirements of the Companies pursuant to the DIP Facility ("Sale");

(g) consistent with the requirements of the Companies pursuant to the DIP Facility: oversee and direct the Companies and their advisors through the Sale process, including due diligence, marketing, discussions and negotiations with potential bidders, seeking Bankruptcy Court approval and filing such other pleadings as may be necessary or desirable in connection with the Sale, any auctions in connection with the Sale, and documenting and closing the Sale;

(h) oversee and direct the claims reconciliation process, including, without limitation, initiating and pursuing any necessary litigation involving claims filed against the Companies, and approving or seeking approval, as applicable, of any settlements to be executed by the Companies in connection therewith during the pendency of the Chapter 11 Cases;

(i) to the extent necessary and appropriate, attending hearings, meetings, and other events related to the Chapter 11 Cases as the Companies' representative;

(j) retaining or terminating employees, contractors and professionals employed by the Companies, subject to any required approval by the Bankruptcy Court;

(k) oversee and direct the preparation of information, including any reports and the schedules needed for the Chapter 11 Cases, and having access to all of the Companies' controlled materials necessary for such preparation;

(l) participate in meetings with third parties and their respective representatives on all material matters related to the Companies and/or the administration of the Chapter 11 Cases;

(m) consistent with the requirements of the Companies pursuant to the DIP Facility, work with Companies' advisors with respect to the development, negotiation and filing of any chapter 11 plan, disclosure statement or motion to dismiss or convert the Companies' Chapter 11 Cases;

(n) provide testimony before the Bankruptcy Court with respect to the foregoing to the extent (i) deemed appropriate or necessary by the Companies, (ii) consistent with the customary role of a chief restructuring officer, (iii) consistent with the other provisions of this Consulting Agreement, and (iv) consistent with the requirements of the Companies pursuant to the DIP Facility; and

2

(o) consistent with the requirements of the Companies pursuant to the DIP Facility, take any and all actions necessary and appropriate to fulfill the CRO's responsibilities set forth above, including executing all necessary documentation on behalf of the Companies to effectuate the same.

2.  **Term**.    The term of the Consulting Agreement (the "Term") shall be for the period commencing on the Petition Date (the "Agreement Date") and ending upon (a) the entry of an order by the Bankruptcy Court ending the engagement, (b) the Companies' exit from Chapter 11, either through a confirmed chapter 11 plan, a conversion to chapter 7 or a dismissal of the Chapter 11 Cases, or (c) the appointment of a trustee or examiner with expanded powers over any of the Debtors.

3.  **Compensation**.   As compensation by the Companies for all services to be rendered by Mr. Smith to the Companies in all capacities during the Term, Mr. Smith shall receive the following compensation and benefits:

    3.1. Fixed Payment. Mr. Smith shall receive a fixed monthly payment of (the "Fixed Payment") of $35,000 per month, paid monthly in arrears and deposited directly into Mr. Smith's designated bank account unless he advises the Companies that the he wishes to be paid by check.

    3.2 Reimbursement of Expenses. The Companies shall reimburse Mr. Smith for reasonable out-of-pocket expenses (including airfare, lodging, meals, communications) in connection with the performance of the Companies' business requirements.

    3.3. Sale Payment.

        3.3.1. In the event an Eligible Sale Transaction (as defined below) occurs during the Term or within three (3) months immediately after the end of the Term, unless the Term is terminated by the Companies for cause or voluntarily by Mr. Smith (the "Sale Closing"), the Companies shall pay Mr. Smith from the proceeds of the Sale Closing, an amount (the "Sale Payment") equal to (i) $75,000; plus (ii) 0.325% of Proceeds (as defined below).

        3.3.2. The Companies' obligation to make the Sale Payment in accordance with the terms hereof shall be contingent upon and subject to approval of the Bankruptcy Court, which the Companies shall use their best efforts to obtain. Such approval may be obtained in advance of the Sale Closing, following the Sale Closing or pursuant to a confirmed chapter 11 plan for the Companies (the "Chapter 11 Plan"). If such approval is obtained, the Companies shall pay the Sale Payment in a single sum upon the last of the following to occur: (i) the entry of a final order by the Bankruptcy Court approving the Sale Payment, (ii) the Sale Closing, (iii) or the effective date of the Chapter 11 Plan.

        3.3.3. Definitions. For purposes of this Consulting Agreement, (i) "Eligible Sale Transaction" means the Companies' sale of the equity or substantially all of the

3

assets of the Companies to one or more entities as approved by the Bankruptcy Court; and (ii) "Proceeds" shall mean the total value of the consideration paid for the benefit of the Companies or their creditors including cash, the value of any equity securities or equity interests, property, plus any earn-out or contingent payments.

3.4. <u>Bankruptcy Court Approval</u>. For the avoidance of doubt, all compensation described herein is subject to final approval by the Bankruptcy Court.

4. **Discharge, Withdrawal, Termination**. Mr. Smith has the right to request that the Bankruptcy Court terminate this Consulting Agreement with or without cause, and such termination shall be effective no earlier than sixty(60) days' from entry of an order by the Bankruptcy Court approving such termination. If Mr. Smith terminates this Consulting Agreement pursuant to this Section 4 prior to the expiration of the Term, Mr. Smith shall only be entitled to all previously earned, accrued and unpaid Fixed Payments as of the date of the termination of the Term.

5. **Indemnification**. The Companies shall indemnify, defend and hold harmless Mr. Smith from and against any and all losses, claims, damages, liabilities, obligations, suits, penalties, judgments, awards, amounts paid in settlement, and reasonable out-of-pocket costs, fees, expenses and disbursements (including, without limitation, reasonable attorneys' fees and expenses), that may be imposed upon, incurred by, or asserted against Mr. Smith arising out of, resulting from, relating to, or in any manner connected (whether directly or indirectly) with this Consulting Agreement or any services rendered by Mr. Smith pursuant to this Consulting Agreement, except in circumstances resulting from Mr. Smith's (in any capacity) bad faith, gross negligence, willful misconduct, or as otherwise provided by Bankruptcy Court order.

6. **Bankruptcy Court Approval**. The Companies shall seek Bankruptcy Court approval for entry into this Consulting Agreement, which shall become effective upon entry of an order of the Bankruptcy Court granting such approval as set forth in such order.

7. **Miscellaneous**.

7.1. <u>Entire Agreement</u>. This Consulting Agreement contains the entire agreement between Mr. Smith and the Companies with regard to the Companies' engagement of Mr. Smith as CRO and supersedes and nullifies all previous agreements between the Parties about the engagement of Mr. Smith by any of the Companies or any of their affiliates.

7.2. <u>Counterparts</u>. This Consulting Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

7.3. <u>Headings</u>. The headings in this Consulting Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Consulting Agreement.

7.4. <u>Governing Law</u>. This Consulting Agreement shall be governed by, and construed in accordance with and subject to, the laws of the State of Texas. The Bankruptcy Court shall maintain exclusive jurisdiction over this Consulting Agreement.

7.5. <u>Section 409A</u>. All amounts payable to Mr. Smith pursuant to this Consulting Agreement are intended to be exempt from the requirements of Internal Revenue Code Section 409A and the regulations and guidance promulgated thereunder to the maximum extent possible, whether pursuant to the short-term deferral exception described in Treas. Reg. Section 1.409A-1(b)(4) or otherwise. Notwithstanding anything herein to the contrary, this Consulting Agreement shall be interpreted, operated and administered in a manner consistent with such intent.

IN WITNESS WHEREOF, the parties have executed this Consulting Agreement as of the date first mentioned above.

Agilon Energy Holdings II LLC

By: _____

Name: ___Hugh Smith___

Title: ___Manager___


Victoria Port Power LLC

By: _____

Name: ___Hugh Smith___

Title: ___Manager___


Hugh Smith Advisors LLC

By: _____

Name: ___Hugh Smith___

Title: ___Member___


Victoria City Power LLC

By: _____

Name: ___Hugh Smith___

Title: ___Manager___

5