IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **AGILON ENERGY HOLDINGS II LLC,** *et al.* | § | Case No. 21-32156 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**DEBTORS' APPLICATION FOR ORDER AUTHORIZING
THE EMPLOYMENT AND RETENTION OF
ENERGY RESOURCE MANAGEMENT LLC DBA ERM CAPITAL AND
INDEPENDENT BROKERAGE SOLUTIONS LLC AS INVESTMENT BANKER**

---

**This application seeks an order that may adversely affect you. If you oppose the application, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the application should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the application and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the application at the hearing.**

**Represented parties should act through their attorney.**

---

**To the Honorable Marvin Isgur,
United States Bankruptcy Judge:**

Agilon Energy Holdings II LLC, Victoria Port Power LLC, and Victoria City Power LLC (collectively, the "***Debtors***"), file this *Application for Order Authorizing the Employment and Retention of Energy Resource Management LLC dba ERM Capital and Independent Brokerage*

---

[1] The debtors and debtors in possession these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Agilon Energy Holdings II LLC (3389) ("***Agilon***"), Case No. 21-32156; Victoria Port Power LLC (4894) ("***VPP***"), Case No. 21-32157; and Victoria City Power LLC (4169) ("***VCP***" and together with Agilon and VPP, the "***Debtors***"), Case No. 21-32158. The Debtors' mailing address is: 5850 San Felipe, Ste 601, Houston, Texas 77057.

*Solutions LLC as Investment Bankers* (the "***Application***").  In support of this Application, the Debtors respectfully state:

**<u>Summary of Relief Requested</u>**

1.      The Debtors seek authority to retain Energy Resource Management LLC dba ERM Capital ("***ERM Capital***") and Independent Brokerage Solutions LLC ("***IndieBrokers***") (collectively, "***Investment Banker***") as their investment banker, effective as of July 6, 2021, subject to further order of the Court and in accordance with the terms and conditions set forth in that certain engagement agreement, dated July 6, 2021 between Investment Banker and the Debtors (the "***Engagement Agreement***").

2.      The relief requested in this Application is supported by (i) the *Declaration of Craig J. Orchant in Support of Debtors' Application for Order Authorizing the Employment and Retention of Energy Resource Management LLC dba ERM Capital and Independent Brokerage Solutions LLC as Investment Banker* (the "***Orchant Declaration***") attached to this Application as **Exhibit A** and (ii) the *Declaration of Bryon H. Lyons in Support of Debtors' Application for Order Authorizing the Employment and Retention of Energy Resource Management LLC dba ERM Capital and Independent Brokerage Solutions LLC as Investment Banker* (the "***Lyons Declaration***") attached to this Application as **Exhibit B**.  A true and correct copy of the Engagement Agreement is attached as **Exhibit C** to this Application.

**<u>Jurisdiction and Venue</u>**

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Local Rules***") to

2

the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.        Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.        The statutory bases for the relief requested are Bankruptcy Code sections 105(a), 327(a),  330, 1107, and 1108 of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules.

## Background

6.        On June 27, 2021 (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "***Chapter 11 Cases***").

7.        The Debtors continue in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  On June 28, 2021, the Court entered an order [Docket No. 5] authorizing the joint administration and procedural consolidation of this Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

8.        No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.  No statutory committee has been appointed in these Chapter 11 Cases.

## IndieBrokers' Role in these Chapter 11 Cases

9.        All of the Services (defined below) will be provided by ERM Capital.  However, as explained below, IndieBrokers involvement is necessary in order to avoid any potential violation of FINRA/SIPC regulations or any related securities law.

10.     IndieBrokers is a registered broker-dealer with the SEC, and admitted to membership in FINRA and the Securities Investors Protection Corporation (SIPC).   The employees of ERM Capital, including Craig J. Orchant are Associated Persons (as defined by the SEC and by the bylaws of FINRA).   They act as independent contractors with IndieBrokers in order to engage in securities activities under IndieBrokers' supervision.   ERM Capital is considered a branch office of IndieBrokers, with Craig J. Orchant as the Agent in charge of ERM Capital.   This arrangement allows ERM Capital to engage in the due diligence, solicitation and sales as it relates to public and non-public offerings of securities, investment banking services and solicitation and sales as they relate to investment advisory services. IndieBrokers is a co-signatory on all ERM Capital Engagement and Confidentiality Agreements and provides compliance management and certain other billing and back-office activities.

11.     IndieBrokers' will have a limited role in this engagement.   ERM Capital will perform all of the Services (defined below).   However, so as to avoid any potential violation of FINRA/SIPC regulations or any related securities law, ERM Capital has a standing agreement with IndieBrokers whereby any fee received on account of ERM Capital's investment banker activities are paid to IndieBrokers, a licensed broker dealer.   Further, to comply with securities regulations, IndieBrokers has agreements with both ERM Capital and Craig J. Orchant as its Associated Person with regard to the sharing of the fees generated by ERM Capital.   The purpose of this structure and the fee sharing arrangements is to prevent any possible violations of FINRA regulations or related securities law.   As such, to the extent any fees are paid to the Investment Banker in these Chapter 11 Cases, the payment will be made to IndieBrokers, which will in turn pay the agreed upon percentage to ERM Capital and Craig J. Orchant.

**ERM Capital's Qualifications**

12.     ERM Capital is a merchant and investment banking partnership established in 2012.  ERM Capital focuses on the power, energy and infrastructure sectors.  ERM Capital has extensive experience and an excellent reputation in origination, capital investing, mergers and acquisitions, debt and equity structuring and placement.

13.     The Debtors have determined, in the exercise of their business judgment, that the size of their business operations and the complexity of these Chapter 11 Cases require them to employ an investment banker with knowledge of the Debtors' industry and businesses, and the ability to advise them with respect to their efforts to market and sell their assets.  The Debtors have selected the Investment Banker as their investment banker based upon, among other things, the Debtors' need to retain an investment banking firm with ERM Capital's depth of expertise in the power generation industry to provide advice with respect to the sale and restructuring processes. The Debtors further believe that ERM Capital is well-qualified to provide its services to the Debtors in a cost-effective and efficient manner.  Retaining the Investment Banker will enable the Debtors to carry out their duties in the Chapter 11 Cases and to assist in the reorganization of the estate.

14.     The Debtors propose to retain the Investment Banker in accordance with the terms set out in the Engagement Agreement.

**Services to be Provided by ERM Capital**

15.     The Debtors request entry of an order authorizing the employment and retention of ERM Capital as the investment banker for the Debtors and their Chapter 11 Cases, pursuant to the terms and conditions of the Engagement Agreement, which were negotiated at arms' length

and in good faith. Under the Engagement Agreement, the Investment Banker will perform the following services (the "***Services***") at the request of the Debtors:

    i.    Review and analyze the Debtors' historical operations, financial condition, business strategy, and operating forecasts;

    ii.    Assist and advise in the identification, development, and implementation of strategies related to the potential recoveries for the Debtors as it relates to a transaction;

    iii.    Assist in evaluating, structuring and negotiating the terms and conditions of any proposed transaction, including the value of the securities, if any, that may be issued thereunder;

    iv.    Support the development of marketing and diligence materials and identification of prospective acquirers for any asset sale process or other transaction;

    v.    Market the asset sale or other transaction to an agreed list of targets;

    vi.    Assist in evaluating the terms, conditions, and impact of any proposed asset sale transactions;

    vii.    Support the negotiation of documentation in connection with any transaction; and

    viii.    Provide the Debtors with other appropriate general financial advice or such related services thereunder as may be agreed between the Investment Banker and the Debtors.

16.    Debtors submit that it is necessary to employ and retain the Investment Banker pursuant to sections 327 and 328 to serve as their investment banker and that the employment of the Investment Banker for these purposes is appropriate under the circumstances and in the best interest of the estates.

17.    The services that have been and are to be provided by the Investment Banker are necessary to enable the Debtors to maximize the value of their estates and will be complementary to, and not duplicative of, the services of the Debtors' other professionals. The Debtors believe that, based on consultation with their professionals, that the Investment Banker's

proposed Compensation Structure is reasonable given the Investment Banker's quality of services and expertise.

## Terms of Engagement

18.     Subject to approval by the Court, the Debtors propose to employ and retain the Investment Banker to serve as the Debtors' investment banker on the terms and conditions set forth in the Engagement Agreement.

19.     The Investment Banker intends to apply for compensation for its professional services rendered to the Debtors in these Chapter 11 Cases and reimbursement of the expenses it incurs in connection with those services, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, any applicable guidelines established by the U.S. Trustee, and any other applicable procedures or order of the Court consistent with the proposed compensation set forth in the Engagement Agreement (the "***Compensation Structure***").

20.     In summary, subject to approval by the Bankruptcy Court, the Compensation Structure provides for the following:

      a.   A monthly fee (the "***Monthly Fee***") payable upon the entry of an order by the Bankruptcy Court approving the Engagement Agreement and subsequently on the 1st of each month in the amount of $30,000, provided that amount of aggregated Monthly Fees in excess of $150,000 will be credited toward and will reduce the Completion/Success Fee (as defined below) payable to ERM Capital.  The first Monthly Fee payable upon approval by the Bankruptcy Court will be prorated based on the number of days remaining in that calendar month;

      b.   A completion/success fee (the "***Completion/Success Fee***") payable upon the consummation of a Transaction (as defined in the Engagement Agreement) or Qualifying Transaction (as defined in the Engagement Agreement) whether by restructuring, sale, merger, joint venture, or investment in the amount of $500,000 plus 2.0% of the Transaction Value (as defined in the Engagement Agreement) in excess of $50 million;

    c.   A monthly reimbursement of reasonable out-of-pocket expenses (the "***Expenses***") incurred in connection with the Services. Expenses exceeding $1,000 will be incurred only to the extent included in the approved budget for any DIP financing of the Companies or with the prior written consent of the DIP lenders thereunder; and

    d.   All compensation is subject to final approval of the Bankruptcy Court.

21.    As noted above, the Investment Banker will be entitled to reimbursement of reasonable Expenses incurred in connection with this engagement, including but not limited to travel, report production, delivery services, photocopying and other costs incurred in providing the Services. The Investment Banker's billings may include Expenses related to this engagement including, but not limited to, the legal expenses for counsel, time, and expenses associated with administering the engagement and bankruptcy court appearances, as required, photocopying, facsimile transfers, hotel, meals, mileage and other travel plus costs associated with administrative expenses.

22.    As part of the overall compensation payable to the Investment Banker under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless the Investment Banker under certain circumstances specified in the Engagement Agreement. Unlike the market for other professionals that the Debtors may retain, such indemnification provisions are standard market terms for the retention of investment bankers. The Debtors believe that such indemnification provisions are comparable to those generally obtained by investment bank firms of similar statute to the Investment Banker and for comparable engagements, both in and out of bankruptcy. Accordingly, the Debtors request that the Court also approve the terms of the indemnification contained in the Engagement Agreement.

**Disinterestedness**

23.     To the best of the Debtors' knowledge, the Investment Banker is (a) a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code as required by section 327 of the Bankruptcy Code, as modified by sections 328(c) and 1107(b) of the Bankruptcy Code (b) does not hold or represent an interest adverse to the Debtor or their estates with respect to matters as to which the Investment Banker is to be employed, and (c) has no connection to the Debtors, their creditors or related parties.

24.     Specifically, as ERM Capital represents in the Orchant Declaration, ERM Capital's members and employees are not and were not, within two years before the date of the filing of these Chapter 11 Cases, creditors, equity security holders, insiders or employees of the Debtors.  In addition, as set forth in the Orchant Declaration:

    a.   ERM Capital, its members and employees are not and were not, within two years before the date of the filing of these Chapter 11 Cases, creditors, equity security holders, insiders or employees of the Debtors;

    b.   ERM Capital will not employ any past or present employees of the Debtors in connection with its work as the Investment Banker in these Chapter 11 Cases; and

    c.   In its capacity as Investment Banker in these chapter 11 cases, ERM Capital will not intentionally misrepresent any fact to any person.

25.     Specifically, as IndieBrokers represents in the Lyons Declaration, IndieBrokers' members and employees are not and were not, within two years before the date of the filing of these Chapter 11 Cases, creditors, equity security holders, insiders or employees of the Debtors. In addition, as set forth in the Lyons Declaration:

    a.   IndieBrokers, its members and employees are not and were not, within two years before the date of the filing of these Chapter 11 Cases, creditors, equity security holders, insiders or employees of the Debtors;

    b.   IndieBrokers will not employ any past or present employees of the Debtors in connection with its work as the Investment Banker in these Chapter 11 Cases; and

c. In its capacity as Investment Banker in these chapter 11 cases, IndieBrokers will not intentionally misrepresent any fact to any person.

26. ERM Capital searched its electronic database to determine whether they had any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Orchant Declaration, ERM Capital has represented that ERM Capital holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which ERM Capital would be employed.

27. Likewise IndieBrokers searched its electronic database to determine whether they had any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Lyons Declaration, IndieBrokers has represented that IndieBrokers holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which IndieBrokers would be employed.

28. In addition, as set forth in both the Orchant Declaration and the Lyons Declaration, if any new materials facts or relationships are discovered or arise, the Investment Banker will provide the Court with a supplemental declaration.

## Applicable Authority

29. The Debtors submit that the retention of the Investment Banker under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court' s approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under

this title." 11 U.S.C. § 327(a).  Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

> (a)    is not a creditor, an equity security holder, or an insider;
>
> (b)    is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (c)    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

30.    Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . . ." 11 U.S.C. § 328(a).  The Debtors submit that the terms and conditions of the Investment Banker's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character.  Since Debtors will require substantial assistance with the marketing and sale process, it is reasonable for Debtors to seek to employ and retain the Investment Banker to serve as its investment bankers on the terms and conditions set forth herein.

## Notice

31.    Notice of this Application has been provided to: (i) the Office of the United States Trustee; (ii) those persons who have formally appeared and requested notice of service in this proceeding pursuant to Bankruptcy Rules 2002; (iii) counsel for and the members of any committees appointed by this Court; (iv) counsel for the Debtors' first-lien prepetition lender and proposed debtor-in-possession credit facility; (v) the thirty (30) largest unsecured creditors of the

Debtors; (vi) governmental agencies having a regulatory or statutory interest in these cases; and (vii) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1.  A copy of this Application is also available on the website of the Debtors' notice and claims agent at http://cases.stretto.com/agilonenergy.   In light of the nature of the relief requested, and the exigent circumstances of these cases, the Debtors submit that no further notice is necessary.

The Debtors respectfully request that the Court (i) enter a proposed order in substantially the same form as that submitted with this Application granting the relief requested herein and approving the Investment Banker's retention as investment banker to the Debtors in these Chapter 11 Cases and (ii) provide such other relief as the Court deems appropriate and just.

Respectfully submitted,

*/s/ Simon R. Mayer*
Elizabeth M. Guffy
Texas Bar No. 08592525
Simon R. Mayer
Texas Bar No. 24060243
**LOCKE LORD LLP**
600 Travis St., Suite 2800
Houston, TX 77002
Telephone:  (713) 226-1200
Facsimile:  (713) 223-3717
Email: eguffy@lockelord.com
          simon.mayer@lockelord.com

***Proposed Attorneys for***
***Agilon Energy Holdings II LLC, et al.***

**Certificate of Service**

The undersigned certifies that this Application was served electronically on July 30, 2021 via ECF on those parties registered to receive ECF service in these Chapter 11 Cases.

*/s/ Simon R. Mayer*
Simon R. Mayer