**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **AGILON ENERGY HOLDINGS II LLC,** *et al.* | § | **Case No. 21-32156 (MI)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN**
**ENERGY RESOURCE MANAGEMENT LLC DBA ERM CAPITAL AND**
**INDEPENDENT BROKERAGE SOLUTIONS LLC AS INVESTMENT BANKER**

Upon the application (the "***Application***")[2] of the debtors in possession in the above-captioned case (collectively, the "***Debtors***") for an order (this "***Order***") pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "***Bankruptcy Code***"), authorizing the Debtors to employ and retain Energy Resource Management LLC dba ERM Capital ("***ERM Capital***") and Independent Brokerage Solutions LLC ("***IndieBrokers***") (collectively, "***Investment Banker***") as their investment banker, effective as of July 6, 2021, on the terms set forth in the engagement agreement (the "***Engagement Agreement***") attached hereto as **Exhibit 1**; and upon the *Declaration of Craig J. Orchant in Support of Debtors' Application for Order Authorizing the Employment and Retention of Energy Resource Management LLC dba ERM Capital and Independent Brokerage Solutions LLC as Investment Banker* (the "***Orchant Declaration***") attached to the Application as **Exhibit A** and the *Declaration of Bryon H. Lyons in Support of Debtors' Application for Order Authorizing the Employment and Retention of*

---

[1]  The debtors and debtors in possession these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Agilon Energy Holdings II LLC (3389) ("***Agilon***"), Case No. 21-32156; Victoria Port Power LLC (4894) ("***VPP***"), Case No. 21-32157; and Victoria City Power  LLC (4169) ("***VCP***" and together with Agilon and VPP, the "***Debtors***"), Case No. 21-32158. The Debtors' mailing address is: 5850 San Felipe, Ste 601, Houston, Texas 77057.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

1

*Energy Resource Management LLC dba ERM Capital and Independent Brokerage Solutions LLC as Investment Banker* (the "***Lyons Declaration***") attached to the Application as **Exhibit B**; and due and adequate notice of the Application having been given; and the Court being satisfied that the Investment Banker is a "disinterested person" as such term is defined under section 101(14) of the Bankruptcy Code; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by this Application is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      Pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Bankruptcy Local Rule 2014-1, the Debtors are hereby authorized to employ and retain ERM Capital and IndieBrokers as the Investment Banker to the Debtors, effective as of July 6, 2021 on the terms set forth in the Engagement Agreement, the Orchant Declaration and the Lyons Declaration, as modified by this Order.

2.      The terms of the Engagement Agreement, including without limitation, the compensation provisions and the indemnification provisions, are reasonable terms and conditions of employment and are hereby approved, as modified by this Order.

3.      The Investment Banker shall apply for compensation for professional services rendered and reimbursement of expenses in connection with these Chapter 11 Cases in compliance with Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, and the Bankruptcy Local Rules as may then be applicable, and any applicable orders and procedures of this Court, including any interim compensation orders. For billing purposes, the Investment Banker shall keep its time in one tenth (1/10) hour increments.

4.      The Investment Banker is entitled to reimbursement of actual and necessary expenses, upon application and as approved by the Court.

5.      The Investment Banker shall file interim and final fee applications for allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court; *provided*, that in the event that the Investment Banker seeks reimbursement for attorneys' fees and expenses consistent with the terms of this Order, the invoices and supporting time records from such attorneys shall be included in the Investment Banker's own interim and final applications, and such invoices and time records shall be in compliance with the Local Rules, and shall be subject to the applicable Guidelines and approval of the Court under the standards of Bankruptcy Code sections 330 and 331, without regard to whether such attorney has been retained under Bankruptcy Code section 327.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Agreement, the Orchant Declaration or the Lyons Declaration, the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the services provided by the Investment Banker and fees for defending against any formal objection to the Investment Banker's fee applications under the Bankruptcy Code are not approved by this Order, but are instead subject to further order of the Court.  For billing purposes, the Investment Banker shall keep its time in one tenth (1/10) hour increments in accordance with the U.S. Trustee Guidelines. All billing records filed in support of fee applications will use an open and searchable LEDES or other electronic data format. Billing records will use the U.S. Trustee's standard project categories.

7.      Notwithstanding anything to the contrary contained herein, the United States Trustee for the Southern District of Texas retains all rights to respond or object to the Investment Banker's monthly, interim and final applications for compensation and reimbursement of out-of-pocket expenses based on the reasonableness standard in Bankruptcy Code section 330. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of the Investment Banker's fees.

8.      To the extent the Investment Banker uses the services of independent contractors (the "*Contractors*") in the Chapter 11 Cases, the Investment Banker shall: (a) pass through the cost of such Contractors to the Debtors at the same rate that the Investment Banker pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for the Investment Banker; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

9.      The Investment Banker shall provide reasonable notice to the Debtors, the U.S. Trustee, and any Committee before any increases in the rates set forth in the Application are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in Bankruptcy Code section 330, and the Court retains the right to review any rate increase pursuant to Bankruptcy Code section 330.

10.      The Investment Banker will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, the Investment Banker

will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

11.     If the Debtors wish to expand the scope of the Investment Banker's services beyond those services set forth in this Order, the Debtors shall be required to seek further approval from this Court. The Debtors shall file notice of any proposed additional services (the "***Proposed Additional Services***") and any underlying engagement agreement with the Court and serve such notice of the U.S. Trustee, the Committee, and any party requesting notice under Bankruptcy Rule 2002.  If no such party files an objection within 21 days of the Debtors filing such notice, the Proposed Additional Services and any underlying engagement agreement may be approved by the Court by further order without further notice or hearing.

12.     Notwithstanding anything to the contrary in this Order, during the pendency of these Chapter 11 Cases, the Investment Banker will not use the services of its affiliates unless the applicable affiliate is included in a connections search or files a declaration of disinterestedness with applicable disclosures of connections, if any, and such the Investment Banker affiliate is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), and as required by Bankruptcy Code section 327(a).

13.     To the extent there is inconsistency between the terms of the Engagement Agreement, the Application, the Orchant Declaration and the Lyons Declaration and this Order, the terms of this Order shall govern.

14.     The indemnification provisions included in the Engagement Agreement and its attachments are approved, subject to the following:

   a)     The Investment Banker shall not be entitled to indemnification or reimbursement for services other than those described in the Engagement Agreement, unless such services and indemnification therefor are approved by the Court; provided, that to the extent additional engagement

letter(s) are filed with the Court and no party objects to such engagement letter(s) within 14 days of its filing, the Debtors may file a certificate of no objection and such engagement letter(s) shall be deemed approved by the Court upon the Debtors' filing such certificate of no objection;

b)      The Debtors shall have no obligation to indemnify the Investment Banker, or provide reimbursement to the Investment Banker, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from the Investment Banker's actual fraud, bad faith, self-dealing, breach of fiduciary duty (if any such duty exists), gross negligence or willful misconduct; or (ii) judicially determined (the determination having become final), to be based on a breach of the Investment Banker's contractual obligations to the Debtors; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) immediately above, but determined by the Court, after notice and a hearing to be a claim or expense for which the Investment Banker should not receive indemnity or reimbursement under the terms of the Investment Banker's retention by the Debtors pursuant to the terms of the Engagement Letters, as modified by this Order; and

c)      If, before the earlier of: (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing these chapter 11 cases, the Investment Banker believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification and/or reimbursement obligations under the Engagement Letters (as modified by this Order), including without limitation the advancement of defense costs, the Investment Banker must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Investment Banker before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Investment Banker for indemnification or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Investment Banker.  All parties in interest shall retain the right to object to any demand by the Investment Banker for indemnification or reimbursement.

15.     The Investment Banker shall use its best efforts, and will coordinate with the Debtors and the other retained professionals, not to duplicate any of the services provided to the Debtors by any of the other retained professionals.

6

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

17.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

19.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:

_____
Marvin Isgur
United States Bankruptcy Judge

# Exhibit 1


**ERM** Capital

July 6, 2021

Mr. Hugh Smith
Chief Restructuring Officer
c/o Agilon Energy Holdings II, LLC
5850 San Felipe St Ste 650
Houston, TX 77057-8099

Dear Hugh,

This letter agreement (this "Engagement Letter") sets forth the agreement by and among Energy Resource Management LLC dba ERM Capital and its affiliates ("ERM") and Independent Brokerage Solutions LLC Member: FINRA/SIPC ("IndieBrokers"), together, the "Financial Advisor") and Agilon Energy Holdings II, LLC, Victoria Port Power, LLC, and Victoria City Power, LLC (collectively, the "Companies"). Subject to the terms and conditions of this Engagement Letter, the Companies engage the Financial Advisor to act as its advisor in their restructuring or liquidation , including, but not limited to, strategic transactions of the Companies by merger, combination, sale or debt exchange of the Companies' assets with or to an acquiror or creditor (each, subject to approval of the bankruptcy court with jurisdiction over the Companies' chapter 11 cases (the "Bankruptcy Court") and to any approvals required pursuant to any debtor-in-possession financing ("DIP Financing") of the Companies, a "Transaction").

Any other transaction not specifically included in the Engagement Letter shall require an additional written agreement signed by the parties to be appended to the Engagement Letter as additional engagements ("Additional Engagements"). Any such additional Engagements shall be subject to Bankruptcy Court approval and any approvals required under the Companies' DIP Financing.

## Services.

The Financial Advisor will provide the following services as may be requested by the Companies:

i)      Review and analyze the Companies' historical operations, financial condition, business strategy, and operating forecasts;

ii)     Assist and advise in the identification, development, and implementation of strategies related to the potential recoveries for the Companies as it relates to a Transaction;

iii)    Assist in evaluating the business and financial impact of various restructuring alternatives of the Companies;

iv)     Assist in evaluating, structuring and negotiating the terms  and conditions of any proposed Transaction, including the value of the securities, if any, that may be issued thereunder;

v)      Support the development of marketing and diligence materials and identification of prospective acquirers for any asset sale process or other Transaction;

1



vi)   Market the asset sale or other Transaction to an agreed list of targets;

vii)   Assist in evaluating the terms, conditions, and impact of any proposed asset sale Transactions;

viii)   Support the negotiation of documentation in connection with any Transaction; and

ix)   Provide the Companies with other appropriate general financial advice or such related services hereunder as may be agreed between the Financial Advisor and Companies.

It is understood and agreed that the Financial Advisor's services hereunder will not include providing any legal, regulatory, accounting or tax advice or developing any tax strategies for the Companies. If the Companies request the Financial Advisor to provide additional services not otherwise contemplated by this Engagement Letter, the Companies and ERM and/or IndieBrokers will, subject to Bankruptcy Court approval and any approvals required under the Companies' DIP Financing, enter into an Additional Engagement, which will set forth the nature and scope of the additional services, appropriate compensation and other customary matters, as mutually agreed upon by the Companies and ERM and/or IndieBrokers. To coordinate the efforts in connection with a Transaction, during the term of this Engagement Letter, the Companies and the Financial Advisor will promptly inform and consult each other with respect to inquiries received from third parties in connection with any Transaction(s) contemplated herein.

_Compensation._ The Companies agree, subject to Bankruptcy Court approval, to pay to ERM the following compensation:

i)   A monthly fee (the "Monthly Fee") payable upon the entry of an order by the Bankruptcy Court approving this Engagement Letter and subsequently on the 1st of each month in the amount of $30,000, provided that amount of aggregated Monthly Fees in excess of $150,000 will be credited toward and will reduce any Completion/Success Fee (as defined below) payable to the Financial Advisor. The first Monthly Fee payable upon approval by the Bankruptcy Court will be prorated based on the number of days remaining in that calendar month;

ii)   A completion/success fee (the "Completion/Success Fee") payable upon consummation of a Transaction or Qualifying Transaction whether by restructuring, sale, merger, joint-venture, or investment in the amount of $500,000 plus 2.0% of the Transaction Value (as defined below) in excess of $50 million; and,

Case 21-32156    Document 84-4    Filed in TXSB on 07/30/21    Page 10 of 17

iii)   A monthly reimbursement of reasonable out-of-pocket expenses (the "Expenses") incurred in connection with the Services. Expenses exceeding $1,000 will be incurred only to the extent included in the approved budget for any DIP financing of the Companies or with the prior written consent of the DIP lenders thereunder.

As used in this letter agreement, "Transaction Value" shall mean, with respect to any Transaction, the total value of the consideration paid or payable and the total amount of all financing received or


**ERM** Capital

committed, in each case directly or indirectly to, or for the benefit of, the Companies and/or its shareholders or creditors including without limitation or duplication: (i) the amount of any cash consideration; plus (ii) the value of any equity securities or equity interests, property received or to be received (valued at fair market value), including without limitation, any debt exchanged for value; plus any earn-out or contingent payment or compensation comprising any part of the Transaction consideration.

Any part of the Transaction Value held pursuant to an escrow account established before or in connection with the consummation of a Transaction shall be deemed paid or received and not contingent. As used in this letter agreement, "Qualifying Transaction" means the later of the closing of any Transaction similar to that described herein by the Companies, with any investor or partner introduced by the Financial Advisor, which occurs during the 6-month period following the termination of this Engagement Letter.

No fee(s) payable to any party other than the Financial Advisor by the Companies in connection with a Transaction shall reduce or otherwise affect any fee(s) payable hereunder.

Upon termination of this Engagement Letter, the Companies shall remain obligated to pay the Financial Advisor all reasonable and documented out-of-pocket expenses hereunder in accordance with the above incurred on or before the effective date of such termination.

*Term*. This Engagement Letter will commence on the date first set forth above and conclude on the earlier of (i) consummation of all Transactions related to the restructuring process, (ii) 60 days written notice from either party, unless extended by mutual agreement, or (iii) the entry of any order by the Bankruptcy Court terminating the engagement. Notwithstanding the foregoing, the Parties agree that the provisions entitled Compensation, Indemnification, Independent Contractor, Confidentiality, Conflicts, and Miscellaneous will survive any such termination.

*Indemnification*. As the Financial Advisor is acting on the Companies' behalf, the Companies agree to indemnify each of the Financial Advisor, their affiliates, and certain related parties in the manner set forth in Annex A which is attached and incorporated by reference in its entirety to this Engagement Letter, the provisions of which are hereby acknowledged by the Companies.

*Use of Information*. The Companies will furnish (or will use their reasonable efforts to cause other parties to furnish) to the Financial Advisor such information as the Financial Advisor reasonably requests for purposes of performing services under this Engagement Letter (the "Information").
Case 21-31258   Document 83-1   Filed in TXSB on 07/30/21   Page 11 of 17
The Companies hereby agree and represent that all Information of the Companies furnished to the Financial Advisor by the Companies will be accurate and complete, to the Companies' knowledge, in all material respects at the time provided, and that, if the Companies are aware of any Information becoming materially inaccurate, incomplete or misleading during the engagement hereunder, the Companies will promptly advise the Financial Advisor. The Companies recognize and confirm that the Financial Advisor assumes no responsibility for the accuracy and completeness of the Information (including information available from generally recognized public sources) and will be using and relying on the Information (and information available from generally recognized public sources) without assuming responsibility for



independent verification or independent evaluation of any of the assets or liabilities (contingent or otherwise) of the Companies.

*Independent Contractor.* The Companies acknowledge that in performing its services, each of ERM and IndieBrokers are acting as an independent contractor and not as a fiduciary to the Companies or any other person. The Companies acknowledge that in performing its services hereunder, the Financial Advisor shall act solely pursuant to a contractual relationship on an arm's length basis with duties owed solely to the Companies and neither this engagement nor the delivery of any advice in connection with this engagement is intended to confer rights (directly or indirectly as to any third party beneficiary or otherwise) upon security holders or creditors of the Companies or any other parties as against the Financial Advisor or any other Indemnified Party (as defined in Annex A hereto).

*Confidentiality.* The parties hereto acknowledge that confidentiality shall be governed by the Nondisclosure Agreement between the Companies, ERM and IndieBrokers dated July 6, 2021 (the "NDA").

*Conflicts.* The Companies acknowledge that the Financial Advisor and their affiliates may have and may continue to have investment banking and other relationships with parties other than the Companies pursuant to which the Financial Advisor may acquire information of interest to the Companies. The Financial Advisor agrees and acknowledges that it will make such disclosures of conflicts as may be required by the Bankruptcy Code or the Bankruptcy Court. The Financial Advisor shall have no obligation to make any additional disclosures to the Companies or to use such information in connection with any contemplated Transaction.

*Anti-Money Laundering.* To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify, and record information that identifies each person with whom they do business. This means the Financial Advisor must ask the Companies and their owners and affiliates, to be determined by the Financial Advisor for certain identifying information, including a government-issued identification number (e.g., a U.S. taxpayer identification number) and such other information or documents that the Financial Advisor considers appropriate to verify the Companies' identity, such as certified articles of incorporation, a government-issued business license, a partnership agreement or a trust instrument.

*Miscellaneous.* The validity, interpretation, and enforcement of this Engagement Letter, including Annex A hereto, matters arising out of or related to this Engagement Letter (or *Annex A*) or its making, performance or breach, and/or related matters, will be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be fully performed therein.

Case 21-31120 Document 84-4 Filed in TXSB on 07/30/21 Page 12 of 17

Each of the Companies, ERM, and IndieBrokers, irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court for the purpose of any suit, action or other proceeding concerning the validity, interpretation, and enforcement of this Engagement Letter, including Annex A hereto, matters arising out of or related to this Engagement Letter (or Annex A) or its making, performance or breach, and/or related matters.

4



Each of the Companies, ERM, and IndieBrokers hereby waives any right it may have to a trial by jury in respect of any claim brought by or on behalf of any of the parties based upon, arising out of or in connection with this Engagement Letter or the Transactions contemplated hereby.

The Companies represent and warrant to the Financial Advisor that there are no brokers, representatives or other persons arising through the Companies who have an interest in compensation due to the Financial Advisor hereunder from any Transaction or the services contemplated herein. Notwithstanding anything to the contrary in this Engagement Letter, nothing herein shall prohibit the Companies from engaging other advisors for services not in conflict with this Engagement Letter. ERM and IndieBrokers shall work cooperatively with the Companies' other advisors and will endeavor to avoid any duplication of effort.

The Financial Advisor may, at its own expense, place announcements or advertisements in financial newspapers, journals, and websites describing the Financial Advisor or the services hereunder upon consummation of a Transaction that names the Companies.

This Engagement Letter may not be amended or modified except in writing signed by the Companies, ERM, and IndieBrokers, subject to approval by the Bankruptcy court and any approvals required by the Companies' DIP Financing, and may be executed in two or more counterparts, each of which will be deemed to be an original, but all of which will constitute one and the same agreement. All rights, liabilities and obligations hereunder will be binding upon and inure to the benefit of only the Companies, ERM, IndieBrokers, each an Indemnified Party (as defined in Annex A) and their respective successors and assigns, and no other person.

*[Remainder of Page Intentionally Left Blank----Signature Page to Follow]*

5



Please confirm our mutual understanding of this engagement by signing and returning to us the enclosed duplicate copy of this Engagement Letter. ERM is pleased that the Companies have engaged it as Financial Advisor and are looking forward to working with the Companies in this capacity.

Very truly yours,

ERM Capital

By:
Name: Craig J. Orchant
Title:   Managing Partner

Independent Brokerage Advisors LLC

By:
Name: Bryon H. Lyons
Title:   CEO

Agreed to and accepted as of the above date.

Agilon Energy Holdings II, LLC

By:     *Hugh Smith*
Name:
Title   *Manager*

Victoria Port Power, LLC

By:     *Hugh Smith*
Name:
Title   *Manager*

6

**ERM** Capital

Victoria City Power, LLC

By: _Hugh Smith_
Name: Hugh Smith

Title: Manager

7



Annex A
INDEMNIFICATION AGREEMENT

In connection with the services to be provided by ERM and IndieBrokers pursuant to the letter agreement (the "Engagement Letter") to which this Annex A is attached, the Companies agree to indemnify and hold harmless each of ERM, IndieBrokers, and their affiliates and their respective present and former directors, officers, employees, agents, and controlling persons (each such person, an "Indemnified Party") to the extent fully permitted by law from and against any losses, claims, damages and liabilities, joint or several (collectively, the "Damages"), to which such Indemnified Party may become subject in connection with or otherwise relating to or arising from the performance of services contemplated by this Engagement Letter by an Indemnified Party thereunder, and will reimburse each Indemnified Party for all reasonable fees and expenses (including the reasonable fees and expenses of counsel) (collectively, "Expenses") as incurred in connection with investigating, preparing, pursuing or defending any threatened or pending claim, action, proceeding or investigation (collectively, the "Proceedings") arising therefrom, whether or not such Indemnified Party is a formal party to such Proceeding, and in enforcing this Annex A; provided that the Companies will not be liable to any such Indemnified Party (a) for any settlement by an Indemnified Party effected without the Companies' prior written consent (not to be unreasonably withheld, conditioned or delayed); or (b) to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of any Indemnified Party. The Companies also agree that no Indemnified Party will have any liability (whether direct or indirect, in contract, tort or otherwise) to the Companies or any person asserting claims on behalf of the Companies arising out of or in connection with the engagement of or performance of services by any Indemnified Party hereunder, except for (i) breach of, or to enforce the terms of, this Engagement Letter or the NDA or (ii) to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Party.

Promptly after receipt by an Indemnified Party of notice of any intention or threat to commence an action, suit or proceeding or notice of the commencement of any action, suit or proceeding, such Indemnified Party will, if a claim in respect thereof is to be made against the Companies pursuant hereto, promptly notify the Companies in writing of the same. In case any such action is brought against any Indemnified Party and such Indemnified Party notifies the Companies of the commencement thereof, the Companies may elect to assume the defense thereof, with counsel reasonably satisfactory to such Indemnified Party, and an Indemnified Party may employ counsel to participate in the defense of any such action provided, that the employment of such counsel shall be at the Indemnified Party's own expense, unless (i) the employment of such counsel has been authorized in writing by the Companies, (ii) the Indemnified Party has reasonably concluded (based upon advice of counsel to the Indemnified Party) that there are legal defenses available to it that conflict with defenses available to and the Companies that makes it impossible or inadvisable for counsel to the Indemnifying Party to conduct the defense of both the Companies and the Indemnified Party (in which case the Companies will not have the right to direct the defense of such action on behalf of the Indemnified Party), or (iii) the Companies have not in fact employed counsel reasonably satisfactory to the Indemnified Party to assume the defense of such action within a reasonable time after receiving notice of the action, suit or proceeding, in each of which cases the

Case 11-31120 Document 814 Filed in TXSB on 07/30/21 Page 16 of 17

8



reasonable fees, disbursements and other charges of such counsel will be at the expense of the Companies; provided, further, that in no event shall the Companies be required to pay fees and expenses for more than one firm of attorneys representing all Indemnified Parties. Any failure or delay by an Indemnified Party to give the notice referred to in this paragraph shall not affect such Indemnified Party's right to be indemnified hereunder, except to the extent that such failure or delay causes actual harm to the Companies, or prejudices its ability to defend such action, suit or proceeding on behalf of such Indemnified Party.

The indemnity and reimbursement obligations of the Companies hereunder will be in addition (without duplication) to any liability, which the Companies may have at common law or otherwise to any Indemnified Party and will be binding upon and inure to the benefit of any successors, assigns, heirs, and personal representatives of the Companies or an Indemnified Party. The provisions of this Annex will survive the modification or termination of this Engagement.