IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § § | **Chapter 11** |
| **AGILON ENERGY HOLDINGS II, LLC,** *et al.* | § § § | **Case No. 21-32156 (MI)** |
| Debtors.[1] | § § § | **(Jointly Administered)** |

**FOURTH STIPULATION AND AGREED BRIDGE ORDER
(I) EXTENDING DEBTORS' AUTHORIZED USE OF CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363, AND (II) GRANTING RELATED RELIEF**

This stipulation and agreed order (this "***Stipulation and Agreed Order***") is made and entered into by and among (a) Agilon Energy Holdings II LLC, Victoria Port Power LLC, and Victoria City Power LLC, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***") and (b) The Prudential Insurance Company of America, Prudential Legacy Insurance Company of New Jersey, and Prudential Retirement Insurance and Annuity Company (collectively, the "***Prepetition Secured Parties***" and/or "***DIP Lenders***"). The Debtors, together with the Prepetition Secured Parties, are collectively referred to herein as "***Parties***." The Parties hereby stipulate and agree as follows:

**Recitals**

**WHEREAS**, on June 27, 2021 (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the chapter 11 cases (the "***Cases***"). The Cases are being jointly administered for procedural purposes. The Debtors

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Agilon Energy Holdings II, LLC (3389), Case No. 21-32156; Victoria Port Power LLC (4894), Case No. 21-32157; and Victoria City Power LLC (4169), Case No. 21-32158. The Debtors' mailing address is: PO Box 163, Plantersville, Texas 77363.

continued in possession of their respective properties and continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**WHEREAS**, on July 13, 2021, the Debtors filed their *Emergency Motion for Entry of an Order (I) Authorizing Senior Secured Postpetition Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, and 364, and (IV) Granting the Related Relief* [Docket No. 38] (the "***Emergency DIP Motion***").  By the Emergency DIP Motion, the Debtors sought approval of a new money senior secured, superpriority, priming delayed multi-draw term loan in a principal amount not to exceed $1 million (the "***Emergency DIP Facility***") provided by the DIP Lenders.

**WHEREAS**, on August 31, 2021, the Debtors filed their *Emergency Motion for Entry of an Order (I) Authorizing Senior Secured Postpetition Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, and 364, and (IV) Granting the Related Relief* [Docket No. 177] (the "***Replacement DIP Motion***").  A portion of the Replacement DIP Facility was used to repay the Emergency DIP Facility.  By the Replacement DIP Motion, the Debtors sought approval of a new money senior secured, superpriority, priming delayed multi-draw term loan in a principal amount up to $30,000,000.00 (the "***Replacement DIP Facility***") provided by the DIP Lenders.

**WHEREAS**, on September 21, 2021, the Court entered a final order approving the Replacement DIP Motion [Docket No. 240] (the "***DIP Order***").

**WHEREAS**, the DIP Order also authorized the Debtors to use the Prepetition Collateral (as defined therein), including the Cash Collateral, of the Prepetition Secured Parties, and also

2

provided adequate protection to the Prepetition Secured Parties for any diminution in value of their interests in the Prepetition Collateral, including Cash Collateral.

**WHEREAS**, on February 9, 2022, the Court entered an order (the "***Sale Order***") approving the sale of substantially all of the Debtors' assets for a purchase price of $75,500,000.00. [Docket No. 511].

**WHEREAS**, on February 28, 2022, the Court-approved sale closed (the "***Sale Closing***"). At the Sale Closing, limited distributions of certain proceeds of the Sale (the "***Sale Proceeds***") were made in accordance with the Sale Order and the DIP Order, including, but not limited to, the Professional Fee Account (as defined below).

**WHEREAS**, from the proceeds of the DIP Facility and the Sale Proceeds, the Debtor has funded an account to hold funds which are set aside exclusively for the payment of professional fees incurred by the Debtors and the Committee (the "***Professional Fee Account***").  As a result of the Sale Closing the Professional Fee Account includes (a) $1,603,235.94, representing all fees and expenses budgeted for Debtors and Committee professionals through February 28, 2022, minus amounts previously paid to such professionals pursuant to the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals [Docket No. 144]; and (b) $350,000 (the "***Post Trigger Date Carve Out***") pursuant to Paragraph 39 of the DIP Order

**WHEREAS**, all Sale Proceeds remaining after paying and/or funding certain amounts in accordance with the Sale Order, including funding the Professional Fee Account, as provided for above (the "***Retained Funds***") shall be held by the Debtors and (i) used solely in accordance with the DIP Order or any subsequent cash collateral order entered by the Court or (ii) distributed pursuant to an order of the Court.  The Sale Order provides further that any Retained Funds should

be in an amount sufficient to pay all alleged Permitted Prior Liens (as defined therein), subject to reduction only to the extent that any alleged Permitted Prior Lien is disallowed or paid. [Docket No. 511 at ¶ 9].

**WHEREAS**, upon the Sale Closing, the Debtors ceased operations and are no longer generating income. The Replacement DIP Facility was Paid in Full (as defined in the DIP Order), the Debtors' authority to use Cash Collateral terminated, the Carve Out was triggered, and all obligations related to the Carve Out under the DIP Order have been funded and fully satisfied in accordance with the DIP Order by funding the Professional Fee Account as provided for above and may have previously been paid to date.

**WHEREAS**, on March 2, 2022, the Court entered the *Stipulation and Agreed Bridge Order (I) Extending Debtors' Authorized Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Related Relief* [Docket No. 572] (the "**First Stipulation**").

**WHEREAS**, pursuant to the First Stipulation, the Debtors were authorized to use Cash Collateral through and including March 14, 2022.

**WHEREAS**, on March 14, 2022, the Court entered the *Second Stipulation and Agreed Bridge Order (I) Extending Debtors' Authorized Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Related Relief* [Docket No. 581] (the "**Second Stipulation**").

**WHEREAS**, pursuant to the Second Stipulation, the Debtors were authorized to use Cash Collateral through and including March 28, 2022.

**WHEREAS**, on March 29, 2022, the Court entered the *Third Stipulation and Agreed Bridge Order (I) Extending Debtors' Authorized Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Related Relief* [Docket No. 608] (the "**Third Stipulation**" and collectively with the First Stipulation and the Second Stipulation, the "**Prior Stipulations**").

**WHEREAS**, the Debtors are in the process of negotiating a cash collateral agreement with the Prepetition Secured Parties and the Committee that will take them to an effective date for a chapter 11 plan.

**WHEREAS**, while those negotiations are underway, the Debtors have an immediate need for use of Cash Collateral on an emergency basis for a limited period to pay for goods and services delivered post-petition in the ordinary course of business in accordance with the budget (the "***Budget***") attached hereto as **Exhibit 1** in an aggregate amount not to exceed $138,076 for the period from April 11, 2022 through April 24, 2022 and a total amount of $1,030,693 when including the periods covered by the Prior Stipulations (collectively, the "***Critical Expenses***").

**WHEREAS**, the Prepetition Secured Parties have consented to the use of their Cash Collateral subject to the Debtors continuing to provide adequate protection on terms consistent with the DIP Order until such time as a subsequent cash collateral stipulation and order may be entered.

**WHEREAS**, the Debtors and Prepetition Secured Parties have agreed to entry of this Stipulation and Agreed Order granting the Debtors authority to use Cash Collateral to pay the Critical Expenses in accordance with the Budget.

**THEREFORE, IT IS HEREBY STIPULATED AND AGREED, AND UPON APPROVAL BY THE COURT OF THIS STIPULATION AND AGREED ORDER, IT IS SO ORDERED** as follows:

1. The Debtors are hereby authorized, but not directed, to use Cash Collateral to pay Critical Expenses in accordance with the Budget through and including April 24, 2022 (the "***Interim Period***"); provided that Critical Expenses shall not exceed an aggregate amount of $138,076 for the period from April 11, 2022 through April 24, 2022 and a total amount of

$1,030,693 when including the periods covered by the Prior Stipulations.

2. Funds in the Professional Fee Account shall be used only to satisfy professional fees authorized to be paid pursuant to the Interim Compensation Order. Any professional fees and expenses incurred by the Debtors and the Committee from March 1, 2022 through April 24, 2022, may be paid from the Post Trigger Date Carve Out, notwithstanding the provisions of the DIP Order with respect to the use of the Post Trigger Date Carve Out. The Post Trigger Date Carve Out funds shall be allocated 2/3 to the Debtors' professionals, and 1/3 to the Committee's professionals.

3. The Debtors shall continue to provide adequate protection to the Prepetition Secured Parties in accordance with the terms of the DIP Order during the Interim Period, including without limitation preservation of all liens, claims, and interests.

4. A hearing to consider continued use of Cash Collateral is scheduled for April __, 2022 at __:__ _.m. (prevailing Central Time) before the Honorable Marvin Isgur, United States Bankruptcy Judge at the United States Bankruptcy Court for the Southern District of Texas, Courtroom 404, 515 Rusk Street, Houston, Texas 77002 (the "***Cash Collateral Hearing***").

5. Notwithstanding any provision of the Bankruptcy Code or the Bankruptcy Rules to the contrary, this Stipulation and Agreed Order is effective on entry and is not stayed.

6. This Stipulation and Agreed Order is effective only during the Interim Period, unless otherwise extended by Agreement of the Parties or order of the Court. Nothing in this Stipulation and Agreed Order impairs any right or protections in the DIP Order.

7. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Stipulation and Agreed Order.

8. The Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation of this Stipulation and Agreed Order.

    Signed: April [●], 2022.

                                              Marvin Isgur
                                              United States Bankruptcy Judge

**STIPULATED AND AGREED TO BY:**

*/s/ Simon R. Mayer*
Elizabeth M. Guffy
Texas Bar No. 08592525
Simon R. Mayer
Texas Bar No. 24060243
**LOCKE LORD LLP**
600 Travis St., Suite 2800
Houston, TX 77002
Telephone: (713) 226-1200
Facsimile: (713) 223-3717
Email: eguffy@lockelord.com
        simon.mayer@lockelord.com

***Attorneys for***
***Agilon Energy Holdings II LLC, et al.***

*/s/ Paul D. Moak*
**REED SMITH LLP**
Paul D. Moak (TX Bar No. 00794316)
811 Main Street, Suite 1700
Houston, Texas 77002-6010
Telephone: (713) 469-3800
Facsimile: (713) 469-3899
Email: pmoak@reedsmith.com

*Co-Counsel to the Senior Secured Noteholders*

**MORGAN, LEWIS & BOCKIUS LLP**
Julia Frost-Davies (pro hac vice)
One Federal Street
Boston, MA 02110
Telephone: (617) 341-7700
Facsimile: (617) 341-7701
Email: julia.frost-davies@morganlewis.com

-and-

David L. Lawton (pro hac vice)
One State Street
Hartford, CT 06103
Telephone: (860) 240-2700
Facsimile: (860) 240-2701
Email: david.lawton@morganlewis.com

*Co-Counsel to the Senior Secured Noteholders*

# Exhibit 1

# Budget

**Agilon Energy Holdings II LLC**
**Cash Flow Forecast - Budget through 4/24**
**Closing Date: 2/28/2022**
*Revised 4.13.2022*

| Week ending Sunday<br>Week | Forecast<br>4/17/2022<br>Week 7 | Forecast<br>4/24/2022<br>Week 8 | Forecast<br>TOTAL<br>2 Weeks |
|---|---:|---:|---:|
| **Beginning Cash [A]** | 32,931,382 | 32,810,306 | $ 32,931,382 |
| **Receipts** | | | |
|    Proceeds from Sale | - | - | - |
|    Other Receipts | - | 160,492 | 160,492 |
| **Total Receipts** | - | 160,492 | 160,492 |
| **Disbursements** | | | |
|   Operating Disbursements | | | |
|     Plant Management | - | - | - |
|     Asset Management | - | - | - |
|     Contract Employees | (6,659) | - | (6,659) |
|     Plant Maintenance | - | - | - |
|     Financial | - | - | - |
|     Other Expenses | (17,000) | (17,000) | (34,000) |
|   **Total Operating Disbursements** | (23,659) | (17,000) | (40,659) |
| **Major Project Outlays** | | | |
|    GE Turbine Repair | - | - | - |
|    Other repair/maintenance | - | - | - |
|   **Major Project Outlays** | - | - | - |
| **Restructuring Costs [B]** | | | |
|    Lender Advisors (Legal and FA) | (97,417) | - | (97,417) |
|    Grant Thornton (FA) | - | - | - |
|    Locke Lord (Legal) | - | - | - |
|    Porter Hedges (Legal - conflict counsel) | - | - | - |
|    Hugh Smith Advisors (CRO) | - | - | - |
|    ERM Capital (IB) | - | - | - |
|    UCC Advisors | - | - | - |
|    US Trustee | - | - | - |
|    Claims Agent | - | - | - |
|    Other | - | - | - |
|   **Restructuring Costs** | (97,417) | - | (97,417) |
| **Use of Cash Collateral - Total Disbursements** | (121,075.93) | (17,000.00) | (138,076) |
| **Ending Cash Balance** | 32,810,306 | 32,953,797 | 32,953,797 |
| **Accrued Professional Fees [C]** | 125,650 | 125,650 | 252,165 |

[A] Beginning Cash Balance is as of 4/11/2022 and reflects Debtors' payment of $5.5 million to ProEnergy Services, LLC ("ProEnergy"), in settlement of ProEnergy's claims against the Debtors as approved by the court [Dkt 622].
[B] Budgeted restructuring costs for February will be paid out of the Carve Out Account in accordance with the terms of relevant orders.
[C] Accrued Professional Fees represents budgeted amounts per the attached schedules.

**Agilon Energy Holdings II LLC**

**Restructuring Professional Fees and Expenses Budget - April 2022**

**Updated 4/5/2022**

|  | Total | Forecast 4/3/2022 Week 5 | Forecast 4/10/2022 Week 6 | Forecast 4/17/2022 Week 7 | Forecast 4/24/2022 Week 8 | Forecast 5/1/2022 Week 9 |
|---|---|---|---|---|---|---|
| **Days in Week** |  | 3.00 | 7.00 | 7.00 | 7.00 | 6.00 |
| **Restructuring Professional Fees and Expenses** |  |  |  |  |  |  |
| Locke Lord April | 175,000 | 17,500 | 40,833 | 40,833 | 40,833 | 35,000 |
| Grant Thornton April | 40,000 | 4,000 | 9,333 | 9,333 | 9,333 | 8,000 |
| Hugh Smith April | 36,000 | 3,600 | 8,400 | 8,400 | 8,400 | 7,200 |
| Porter Hedges April | 112,500 | 11,250 | 26,250 | 26,250 | 26,250 | 22,500 |
| UCC April | 175,000 | 17,500 | 40,833 | 40,833 | 40,833 | 35,000 |
| **Restructuring Professional Fees and Expenses Total** | **538,500** | **53,850** | **125,650** | **125,650** | **125,650** | **107,700** |