IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| AGILON ENERGY HOLDINGS II LLC, *et al.* | § § § | Case No. 21-32156 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |

**DEBTORS' PRELIMINARY OBJECTION AND RESERVATION OF RIGHTS AS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER DISMISSING THE CHAPTER 11 CASES OR, ALTERNATIVELY, CONVERTING THE CASES TO CHAPTER 7 AND GRANTING RELATED RELIEF**

[Relates to Docket No. 665]

> At its most fundamental level, a business bankruptcy case is designed to maximize the returns to creditors holding claims against the estate, while allowing a debtor to reorganize. Maximizing creditor recoveries may be done with a reorganization of the business or with its liquidation, but it is a fundamental requirement.
>
> - *In re Moody Nat SHS Houston H, LLC*, 426 B.R. 667, (Bankr. S.D. Tex. 2010) (citing *Fla. Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008)).

To the Honorable Marvin Isgur,
United States Bankruptcy Judge:

Agilon Energy Holdings II LLC ("*Agilon*"), Victoria City Power LLC ("*VCP*"), and Victoria Port Power LLC ("*VPP*" and collectively, the "*Debtors*") submit their preliminary objection[2] (the "*Objection*") to the Official Committee of Unsecured Creditors' (the "*Committee*")

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Agilon Energy Holdings II LLC (3389), Case No. 21-32156; Victoria Port Power LLC (4894), Case No. 21-32157; and Victoria City Power LLC (4169), Case No. 21-32158. The Debtors' mailing address is: PO Box 163, Plantersville, Texas 77363.

[2] While the Debtors did not object to the Committee's setting of its motion on less than four days' notice, they believe that the Committee's motion would be more appropriately addressed at the time of confirmation of the Debtors' proposed chapter 11 plan. The Debtors reserve their rights to assert their position at the hearing and to raise any other objections or relevant issues with the Court at that time.

1

*Emergency Motion of the Official Committee of Unsecured Creditors for Entry of an Order Dismissing the Chapter 11 Cases or, Alternatively, Converting the Cases to Chapter 7 and Granting Related Relief* [Docket No. 665] (the "***Motion to Dismiss***"), and respectfully would show the Court as follows:

## OBJECTION[3]

1. As this Court and others have noted, the fundamental purpose of a business bankruptcy case is to maximize the returns to the debtor's creditors. The Debtors' actions in these chapter 11 cases have consistently been guided by this principle, and that is reflected in the Debtors' proposed Plan [Docket No. 647].

2. Put simply, the Plan offers the only means for a potential return for holders of allowed general unsecured creditors in these chapter 11 cases, who are otherwise "out of the money." Although the Debtors conducted a very successful sale and auction process that resulted in a purchase price that exceeded the expectations of the Debtors' professionals, the proceeds of the sale were insufficient to pay off the secured claims against the assets that were sold. Additionally, the Debtors' Prepetition Senior Secured Lenders were granted adequate protection liens against the Debtors' assets that were not already subject to the lenders' claims. Thus, the Debtors found themselves with no unencumbered assets with which to pay unsecured creditors—or even administrative claims.

3. Faced with these facts, the Debtors reached out to both the Prepetition Senior Secured Lenders and the Committee to explore the possibility of a chapter 11 plan that could address the Debtors' lack of financial resources and provide recoveries for creditors.

---

[3] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Disclosure Statement and Plan.

2

Unfortunately, the Debtors' hopes that the three parties could come to a quick consensus were disappointed.

4. The Prepetition Senior Secured Lenders responded with an expression of willingness to make significant concessions in return for releases and an economically-efficient post-Effective Date administrative structure. The Committee, however, made it clear that it would only support the plan process if the proposed plan included a litigation trust effectively controlled by the Committee and funded (presumably with the Prepetition Senior Secured Lenders' cash collateral) with a significant sum to be used to pay the fees of the litigation trustee and his professionals.[4]

5. The Debtors did not oppose the creation of a litigation trust—in fact, their initial draft plan included that concept—but the Committee's demands could not be satisfied by merely creating the trust. It insisted that the trust also have "adequate" funding for payment of professional fees.[5] In support of this demand, the Committee claimed that the Retained Claims and Causes of Action require extensive additional investigation and that an "adequate" amount of funding will be required to properly investigate those claims.[6]

6. At this point, it became clear that the Committee and the Prepetition Senior Secured Lenders were unlikely to reach an agreement. The lenders—understandably—believed that the concessions they proposed to make under the Plan were above and beyond anything that was

---

[4] The amounts suggested have ranged from $1 million to $250,000.

[5] For the avoidance of any doubt, the Committee's funding request did not include any funds that would be made available for distribution to unsecured creditors. It is also telling that the proposed order submitted by the Committee contains several provisions designed to ensure that the Committee's professionals' fees are paid, but without indicating where the Debtors would get the funds to make those payments.

[6] This assertion ignores the fact that the Debtors' conflicts counsel and financial advisors have already performed an extension investigation and analysis of these claims.

required, either by law or equity, and they declined to add to their losses by funding a litigation trust at the level demanded by the Committee.

7. The Debtors continued to communicate with the Committee regarding the Plan and incorporated many of their comments into the Plan that was filed with the Court. But the Debtors concluded that the only possible way they could maximize returns to their creditors was to work with the Prepetition Senior Secured Lenders and move forward to confirm the Plan.

8. The Plan offers several significant benefits that simply are not available through any other path forward in these chapter 11 cases. In exchange for the requested releases and a post-Effective Date administrative structure that minimizes unnecessary expenses, the lenders have agreed to pay (from their cash collateral) all allowed claims in full with only two exceptions. Those exceptions are the claims of the Prepetition Senior Secured Lenders themselves[7] and the claims of the general unsecured creditors. But the lenders have also agreed that, under the confirmed Plan, they will waive their adequate protection liens and allow all of the net recoveries from the Debtors' Retained Claims and Causes of Action to be shared pro rata among all general unsecured creditors.

9. The end result of these concessions from the Prepetition Senior Secured Lenders is that general unsecured creditors will have a potential recovery on their claims under the Plan. This is a result that simply will not exist under a conversion or dismissal. The Debtors need not explain to the Court in detail the likely effect of conversion or dismissal on the claims of general unsecured creditors when the Debtors have no unencumbered assets. Put bluntly, conversion or dismissal will almost certainly result in the Committee's constituents—general unsecured creditors—receiving nothing at all. Accordingly, the Debtors believe that confirmation of the Plan is the best,

---

[7] Ironically in light of the Committee's assertions in the Motion, conversion or dismissal would likely result in a greater return to the Prepetition Senior Secured Lenders than confirmation of the Plan.

and perhaps only, means of maximizing returns to their creditors and that pursuing any other path forward, including that proposed by the Committee in its Motion, would be a violation of the Debtors' fiduciary duty.

10. The Debtors find the Committee's position in the Motion puzzling. It is asking that the Court dismiss or convert these cases when it is more than obvious that doing so is not in the best interests of unsecured creditors. If the Committee believes that the Plan has flaws that could impede confirmation, it would be more helpful for the Committee to work with the Debtors and the Prepetition Senior Secured Lenders to address them. However, the Committee has made it clear that the lack of an "adequately" funded litigation trust is a deal-breaker and that it will not support the plan process at all unless the Prepetition Senior Secured Lenders accede to its demands on this point.

11. The Committee makes a number of assertions in its Motion that are not supported by the facts. Additionally, it frequently ascribes improper motives to the Prepetition Senior Secured Lenders and suggests that the Debtors and their professionals have not adequately performed their duties. The Debtors will not take up the Court's time addressing each of these. The Court has been fully involved in these chapter 11 cases and is very familiar with not only the events to date, but also with the reputation and abilities of the professionals involved in them. The Debtors trust that the Court will give the Committee's assertions and attacks the weight they deserve.

12. The proposed Plan is designed to maximize returns to all creditors, including general unsecured claims, thus satisfying the fundamental bankruptcy principle of maximizing returns to creditors. Granting the Committee's request to dismiss or convert these chapter 11 cases will result in a significant number of creditors, administrative and otherwise, not receiving any

recoveries at all. The proposed Plan offers all creditors the best possibility for a distribution on their claims. For these reasons, the Committee's Motion to Dismiss should be denied.

## RESERVATION OF RIGHTS

13. This Objection is not limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to the Motion to Dismiss on any ground whatsoever. The Debtors expressly reserve all further substantive or procedural objections.

## CONCLUSION

The Debtors respectfully requests that the Court (i) sustain this Objection; (ii) deny the Committee's Motion to Dismiss; and (iii) grant such other relief as the Court deems just and proper.

*/s/ Simon R. Mayer*
Elizabeth M. Guffy
Texas Bar No. 08592525
Simon R. Mayer
Texas Bar No. 24060243
**LOCKE LORD LLP**
600 Travis St., Suite 2800
Houston, TX 77002
Telephone: (713) 226-1200
Facsimile: (713) 223-3717
Email: eguffy@lockelord.com
         simon.mayer@lockelord.com

*Attorneys for*
*Agilon Energy Holdings II LLC, et al.*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing pleading was served electronically through the Court's ECF system on April 20, 2022, on all parties registered for electronic service.

*/s/ Simon R. Mayer*
Simon R. Mayer