# LIQUIDATION ANALYSIS FOR COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF AGILON ENERGY HOLDINGS II, LLC, ET AL.

This analysis is being provided to demonstrate that the Plan meets the requirements of section 1129(a)(7) of the Bankruptcy Code and to provide additional information in order to assist Holders of Claims in making an informed judgment about the Plan.

The Debtors and their professionals have carefully reviewed the Debtors' financial circumstances, including their liabilities and their available assets, and have analyzed the expected outcome for Holders of Claims both under the terms of the Plan and a liquidation of the Debtors under chapter 7 of the Bankruptcy Code. Based on this analysis, the Debtors believe that the Plan represents a better outcome for their creditors—especially their unsecured creditors—than conversion to a chapter 7 liquidation.

As discussed in the Disclosure Statement, the Debtors sold all of their operating assets in a transaction that was approved by the Bankruptcy Court and that closed on February 28, 2022. After the closing of the sale, the Debtors' only assets were the remaining amount of the Sale Proceeds and the Retained Claims and Causes of Action.

The operating assets sold by the Debtors were subject to the valid and perfected first-priority liens of the Prepetition Senior Secured Lenders. The Prepetition Senior Secured Lenders therefore hold first-priority liens against the Sale Proceeds, which constitute their cash collateral. The only potential exceptions to this are the liens asserted by the Class 2 Mechanic's Lien Claimants who contend that their liens are superior to the liens of the Prepetition Senior Secured Lenders. Even without taking into consideration the claims of the Mechanic's Lien Claimants, however, the Prepetition Senior Secured Lenders' claims total no less than $52,338,000[1], and the remaining Sales Proceeds as of April 15, 2022, are not more than $32,932,000[2]. Accordingly, the entire amount of the remaining Sales Proceeds is fully encumbered by the claims of secured creditors.

Additionally, as compensation for the Debtors' use of the Prepetition Senior Secured Lenders' cash collateral, the Final DIP Order granted the Prepetition Senior Secured Lenders first-priority liens on all of the assets of the Debtors' Estates that were not previously subject to the Prepetition Senior Secured Lenders' prepetition liens. Therefore, although the Prepetition Senior Secured Lenders did not have a prepetition lien against all of the Retained Claims and Causes of Action, the liens granted to the Prepetition Senior Secured Lenders in Final DIP Order attached to all of the Retained Claims and Causes of Action. Liens granted by the Final DIP Order secure an amount equal to all of the Sales Proceeds and other cash collateral that the Debtors have spent since the Petition Date, including, as of April 15, 2022, approximately $720,000 of cash collateral spent since the closing of the sale.

---

[1] Such amount does not include all secured obligations under the Senior Notes, including, without limitation, costs, expenses, fees (including attorneys' fees), indemnities, reimbursement obligations, and other charges and obligations that may be due and payable under the Senior Notes and the other Prepetition Senior Secured Note Documents.

[2] Such amount does not include either (a) any funds escrowed under the asset purchase agreement or (b) the Professional Fee Carve

1

Case 21-32156 Document 692-1 Filed in TXSB on 04/25/22 Page 2 of 10
Case 21-32156 Document 669 Filed in TXSB on 04/21/22 Page 25 of 210
Page 2 of 5

Under the terms of the Plan, the Prepetition Senior Secured Lenders have agreed to waive all of their liens against the Retained Claims and Causes of Action upon the Effective Date of the Plan. As a result, if the Plan is confirmed, any recovery on the Retained Claims and Causes of Action, net of costs, will be directly available for distribution to Holders of Allowed Claims in Class 5—the General Unsecured Creditors.

> The Committee has requested the inclusion of the following statement. The Debtors neither agree with nor adopt the Committee's following statement:
>
> As further discussed below, the Official Committee of Unsecured Creditors (the "*Committee*") believes that such liens asserted by the Prepetition Senior Secured Lenders against the Retained Claims and Causes of Action secure adequate protection claims that are speculative in value and validity and will be disputed by the Committee at the confirmation hearing.

In contrast, if the Debtors' Chapter 11 Cases were converted to a liquidation under chapter 7, the prospective outcome for General Unsecured Creditors would be materially and adversely affected.

When a chapter 11 case is converted to a chapter 7 liquidation, the assets of a debtor in bankruptcy are taken over by an appointed chapter 7 trustee. The trustee then liquidates or otherwise monetizes the debtor's assets and distributes the proceeds to creditors using the priority scheme set out in the Bankruptcy Code, which is basically the following:

- First, to any secured creditor with a valid and perfected lien;
- Second, to pay the administrative fees and costs of the chapter 7;
- Third, to pay the unpaid administrative fees and costs of the chapter 11 case;
- Fourth, to pay any claims entitled to special priority under the Bankruptcy Code; and
- Finally, to pay the claims of general unsecured creditors.

If the Debtors' Chapter 11 Cases were to be converted to chapter 7 liquidations, the remaining Sale Proceeds and any recovery from the Retained Claims and Causes of Action would be distributed according to this priority scheme. Thus, the Sale Proceeds would be applied first to satisfy the claims of the Prepetition Senior Secured Lenders (and to the claims of any Mechanic's Lien claimant who was able to establish that all or part of its lien was superior to the secured claims of the Prepetition Senior Secured Lenders). As noted earlier, the amount of the remaining Sales Proceeds is less than the unpaid amount of the Prepetition Senior Secured Lenders' secured claims, and the Prepetition Senior Secured Lenders' deficiency claim is currently expected to exceed $20,000,000. Therefore, there would be no Sales Proceeds available to pay any other claims in a chapter 7.

Because the Sales Proceeds would all be paid to secured creditors, the administrative claims and the unsecured claims could only be paid from the amounts recovered from the Retained Claims and Causes of Action. However, as discussed above, the Prepetition Senior Secured Lenders were granted liens against the Retained Claims and Causes of Action as adequate protection to

Case 21-32156 Document 692-1 Filed in TXSB on 04/25/22 Page 3 of 5
Case 21-32156 Document 692-1 Filed in TXSB on 04/25/22 Page 3 of 10

3

compensate them for the use of their collateral, including cash collateral, and for the diminution in the value of their collateral postpetition. While the Prepetition Senior Secured Lenders have agreed to waive these liens on the Effective Date of the Plan, if it is confirmed, this would not be the case if the Debtors' Chapter 11 Cases were converted to chapter 7 liquidations. In a chapter 7 liquidation, he Prepetition Senior Secured Lenders would be entitled to receive the proceeds of the Retained Claims and Causes of Action until their adequate protection claims were fully satisfied. While those claims have not yet been established with precision, over the course of these cases the Prepetition Senior Secured Lenders, through DIP financing and the use of cash collateral, have

Case 21-32156 Document 692-1 Filed in TXSB on 04/25/22 Page 4 of 5
Case 21-32156 Document 692-1 Filed in TXSB on 04/25/22 Page 4 of 10

3

funded approximately $10,400,000 of administrative expenses, including operational expenses and the costs and fees of estate professionals.

> The Committee has requested the inclusion of the following statement. The Debtors neither agree with nor adopt the Committee's following statement:
>
> The Committee intends to dispute the value, extent and validity, if any, of the adequate protection claims and liens asserted by the Prepetition Senior Secured Lenders, as the Committee does not believe there has been any diminution in value of the Prepetition Senior Secured Lenders collateral within the meaning of the Bankruptcy Code on various grounds, including that the chapter 11 case was run for the benefit of the Prepetition Senior Secured Lenders who received tremendous value in the case.

If there were any funds remaining after the satisfaction of the Prepetition Senior Secured Lenders' adequate protection claims, the recoveries from the Retained Claims and Causes of Action would then be applied to pay the fees and expenses of the chapter 7 trustee and his or her professionals. While it is difficult to predict exactly what those fees and expenses would be, it is unlikely that the total would be less than $1,000,000.

Assuming the amount of the recoveries from the Retained Claims and Causes of Action are sufficient to pay the Prepetition Senior Secured Lenders' adequate protection claim and the fees and expenses incurred in the chapter 7 cases, any remaining recoveries would next be used to pay any unpaid Allowed Administrative Expense claims from the Debtors' Chapter 11 Cases. Under the Plan, the Prepetition Senior Secured Lenders have agreed to pay the Allowed Administrative Expenses incurred in the Chapter 11 Cases out of the Sale Proceeds, but that would be the case if the Chapter 11 Cases are converted to chapter 7 liquidations. The amount of unpaid Allowed Administrative Expenses from the Chapter 11 Cases would depend on the date the cases were converted, but they may total as much as $1,586,000, which is likely to remain unpaid if the Debtors' Chapter 11 Cases are converted to chapter 7.

Once all of the administrative expenses from both the chapter 7 cases and the chapter 11 cases have been paid in full, the remaining recoveries from the Retained Claims and Causes of Action would next be used to pay any claims that have special priority under the Bankruptcy Code, most of which are described in section 507 of the Bankruptcy Code. Again, under the Plan, the Prepetition Senior Secured Lenders have agreed to payment of Allowed Non-Tax Priority Claims (if any) out of the Sale Proceeds. This benefit will be unavailable to Creditors if the Plan is not confirmed.

Finally, only after all of the preceding types of claims have been paid in full, general unsecured creditors would share pro rata in any remaining funds available.

Given the likely amounts of the claims that would have to be paid ahead of the general unsecured claims, the Debtors believe that their unsecured creditors would receive nothing if their Chapter 11 Cases are converted to chapter 7 liquidations. And while the Debtors cannot give any reliable estimate of the amount that may be recovered from the Retained Claims and Causes of Action, the fact remains that under the Plan, all of the amounts recovered, net only of direct costs, will be available to pay Class 5 General Unsecured Creditors. These differences in recovery under the Plan versus recovery in chapter 7 are summarized by the following diagram:




The only Classes of Claims not being paid in full under the Plan are Classes 1 and 5. The Holders of the Class 1 Claims are the Prepetition Senior Secured Lenders, who support the Plan and have indicated that they will vote to accept it. And as demonstrated by the analysis above, the Holders of Class 5 Claims will receive all of the net proceeds from the Retained Claims and Causes of Action under the Plan, while they will receive nothing if the Debtors' Chapter 11 Cases are converted to chapter 7 liquidations.

It should also be noted that, while it is anticipated that the Holders of Interests in Class 6 will receive no distribution under the Plan, they would also receive no distribution in a chapter 7 liquidation of the Debtors.

Given this analysis, the Debtors believe that the Plan meets the requirements of section 1129(a)(7) in that each Holder of a Claim or Interest that does not vote to accept the Plan "will receive or retain under the plan on account of such claim or interest property of a value as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Document comparison by Workshare Compare on Monday, April 25, 2022 3:06:06 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\users\srmayer\Work Folders\Documents\SRMAYER\Agilon Bankruptcy Case\2022-04-25 Filing\Redline LQ Analysis\2022-04-21 LQ Analysis.pdf |
| Description | 2022-04-21 LQ Analysis |
| Document 2 ID | file://C:\users\srmayer\Work Folders\Documents\SRMAYER\Agilon Bankruptcy Case\2022-04-25 Filing\Redline LQ Analysis\2022-04-25 LQ Analysis.pdf |
| Description | 2022-04-25 LQ Analysis |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 21 |
| Deletions | 5 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |

| Format changes | 0 |
|---|---|
| Total changes | 26 |