# Exhibit 1

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (this "***Agreement***"), is made on this [●] day of [●], 2022, by and among (i) Agilon Energy Holdings II LLC, Victoria City Power LLC and Victoria Port Power LLC (each, a "***Debtor***" and, collectively, the "***Debtors***"), (ii) Hugh Smith Advisors LLC (the "***Plan Administrator***"), and executed in connection with the *Second Amended Combined Disclosure Statement and Joint Plan of Agilon Energy Holdings II, LLC, et al.*, dated May [●], 2012 (as amended, modified, or supplemented, and including all exhibits thereto, the "***Plan***"),[1] filed in the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***").

## RECITALS

**WHEREAS**, on June 27, 2021, the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***");

**WHEREAS**, on [●], 2022, the Bankruptcy Court entered an Order [Docket No. [●]] confirming the Plan (the "***Confirmation Order***");

**WHEREAS**, the Plan provides, on the Effective Date, and in accordance with and pursuant to the terms of the Plan, for the vesting of the Retained Claims and Causes of Action in the Post-Effective Date Debtors;

**WHEREAS**, the Plan provides that the Plan Administrator shall have all the rights, powers, authority, and duties on behalf of each of the Debtors and the Post-Effective Date Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan and this Agreement; and

**WHEREAS**, the Plan provides that the Plan Administrator shall (among other things) establish and thereafter maintain the Disputed Claims Reserve and administer and resolve Disputed Claims.

**NOW THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the mutual agreements of the parties contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE 1
## THE PLAN ADMINISTRATOR

1.1  **Appointment.** The Plan Administrator has been selected by the Debtors pursuant to the Plan and has been appointed as of the Effective Date. The Plan Administrator shall have all the rights, powers, and duties set forth herein and in the Plan.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings provided in the Plan.

1

1.2     **General Powers.**  The Plan Administrator's powers and authority shall include (among others) any and all powers and authority to implement the Plan and to administer and make Distributions to Holders of Allowed Claims and Interests pursuant to the Plan and to wind down the businesses and affairs of the Debtors in accordance with the Plan, the Confirmation Order, this Agreement, and any other agreement entered into pursuant to or in connection with the Plan.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator may control and exercise authority over the Retained Claims and Causes of Action and the acquisition, management, and disposition thereof; provided, however, that nothing in this Agreement shall be deemed to prevent the Plan Administrator from taking any action that he is obligated to take (or electing not to take any action) in the performance of any fiduciary or similar duty that the Plan Administrator owes to the Debtors or any other Person.  The Plan Administrator shall devote such time to the performance of his duties and obligations hereunder as he determines to be appropriate in his absolute and sole discretion, subject to his respective duties and obligations hereunder.  Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement or under the Plan, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to his employment or position as such.  Without limiting the foregoing, but subject to the Plan, the Confirmation Order, and other provisions of this Agreement, the Plan Administrator shall be expressly authorized to:

(a)     Exercise all powers provided to the Plan Administrator under this Agreement, the Plan, and the Confirmation Order.

(b)     Subject to Article IX of the Plan, except to the extent a Claim has been previously Allowed, control and effectuate the Claims reconciliation process (including allowance or disallowance of Claims), in accordance with the terms of the Plan, the Confirmation Order and this Agreement, including to object to, seek to subordinate, compromise, estimate, or settle any and all Claims against the Debtors or the Post-Effective Date Debtors.

(c)     Make Distributions to Holders of Allowed Claims and Interests in accordance with the Plan and the Confirmation Order, including Distributions from the Professional Fee Escrow.

(d)     Exercise his reasonable business judgment to direct and control Post-Effective Date Debtors under the Plan and in accordance with applicable law as necessary to maximize Distributions to Holders of Allowed Claims.

(e)     Prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator or the Post-Effective Date Debtors, as described in the Plan or this Agreement.

(f)     Abandon any property determined by the Plan Administrator to be of de minimis value or burdensome to the Estates.

(g)     Stand in the same position as the Debtors with respect to any claim the Debtors, their Estates, and/or the Post-Effective Date Debtors may have as

       to any attorney-client privilege, the work-product doctrine, or any other privilege attaching to any documents or communications (whether written or oral), and succeed to all of the rights of the Debtors, their Estates, and/or the Post-Effective Date Debtors to preserve, assert, or waive any such privilege.

(h) Pursue litigation funding and/or legal representation on a contingency fee basis to prosecute the Retained Claims and Causes of Action, and then prosecute and/or settle the Retained Claims and Causes of Action as authorized pursuant to, and in accordance with, Section 7.10 of the Plan on behalf of the Post-Effective Date Debtors and for the benefit of the Holders of Allowed Class 5 General Unsecured Claims; however, the Plan Administrator may not employ any professional to investigate or prosecute the Retained Claims and Causes of Action if that professional would have an actual conflict of interest related to such employment, nor may the Plan Administrator agree to accept a waiver of any such professional's conflict of interest. For the avoidance of doubt, the firm Locke Lord LLP shall not be employed to investigate, prosecute, or advise the Plan Administrator as to any of the Retained Claims and Causes of Action as to which Locke Lord LLP has a conflict of interest.

(i) Retain, employ, terminate, or replace professionals to assist or represent it in performing its duties under this Agreement, the Plan, and the Confirmation Order without further Bankruptcy Court approval.

(j) Pay fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtors from the Plan Administrator Expense Reserve.

(k) Maintain the books and records and accounts of the Post-Effective Date Debtors.

(l) Establish and maintain bank accounts in the name(s) of the Post-Effective Date Debtors.

(m) Establish the Plan Administrator Expense Reserve, deposit the Plan Administrator Expense Reserve Amount into the Plan Administrator Expense Reserve, and use the Plan Administrator Expense Reserve solely to satisfy the expenses of the Plan Administrator and the Post-Effective Date Debtors as set forth in the Plan and this Agreement.

(n) Incur and pay, from the Plan Administrator Expense Reserve, reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator.

(o) Administer each Debtor's and Post-Effective Date Debtor's tax obligations, including (a) to the extent required by applicable law, filing tax returns and paying tax obligations, (b) implementing tax allocation and/or tax sharing agreements among the Post-Effective Date Debtors and their subsidiaries, and (c) representing the interest and account of each Debtor, each Debtor's Estate, or each Post-Effective Date Debtor before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit.

(p) Prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors or Post-Effective Date Debtors that are required hereunder, by any Governmental Unit or applicable law, including any forms and filings required by the Government.

(q) Cause the Post-Effective Date Debtors to pay statutory fees in accordance with Article XIII of the Plan.

(r) File a status report with the Bankruptcy Court on a quarterly basis setting forth the activities of the Plan Administrator during such quarter, including an accounting of the Plan Administrator Expense Reserve during such quarter.

(s) Perform other duties and functions that are consistent with the implementation of the Plan or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of this Plan.

(t) Following the Effective Date, in the Plan Administrator's sole discretion, cause each Post-Effective Date Debtor to take such actions as permitted by applicable law and the applicable corporate governance documents.

(u) Following the Effective Date, cause the Post-Effective Debtors to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, the Confirmation Order or this Agreement.

(v) Issue, execute, and deliver any agreements, documents, and instruments contemplated in the Plan (or necessary or desirable to effect the transactions contemplated in the Plan).

(w) Cause the Post-Effective Date Debtors to take all actions consistent with the Plan and the Confirmation Order as may be necessary or appropriate to effect any transaction described in connection with the Plan.

(x) Submit one or more orders to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes and issues a final decree for each of the Bankruptcy Cases of the Post-Effective Date Debtors.

1.3     Compensation of the Plan Administrator. Notwithstanding any contrary provision provided herein, but subject to the provisions of the Plan and to adjustment upon motion of the Plan Administrator and approval of the Bankruptcy Court, the Plan Administrator shall be paid in accordance with **Annex A** attached hereto.

1.4     Professional Agents. The Plan Administrator may hire such attorneys, accountants, and other professionals as may be required or appropriate in connection with this Agreement and his duties under the Plan. The Plan Administrator shall be entitled to retain professionals in his sole discretion, except as set forth herein, in the Plan or in the Confirmation Order.  The provision of services by a professional to the Debtor shall not disqualify such professional from employment by the Plan Administrator.  The reasonable and documented fees and expenses of such professionals shall be paid on a monthly basis in accordance with the Wind-down Budget without any further notice to or action, Order, or approval of the Bankruptcy Court; provided that any disputes related to such fees or expenses shall be brought before the Bankruptcy Court.

1.5     Resignation or Removal of the Plan Administrator. The Plan Administrator may resign at any time by giving at least thirty (30) days' written notice of such intention to do so. Subject to the Plan, upon the resignation, death, incapacity, or removal of the Plan Administrator, a successor Plan Administrator shall be appointed upon motion by the Prepetition Senior secured Lenders and approval of the Bankruptcy Court. Any successor Plan Administrator so appointed shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Administrator and all of such successor's heirs and legal and personal representatives, successors, or assigns. Any successor Plan Administrator shall have all the rights, privileges, powers, and duties of the predecessor Plan Administrator under this Agreement and the Plan.

1.6     Post-Effective Date Debtor Continuance. The dissolution, liquidation, resignation, or removal of the Plan Administrator shall not terminate or dissolve the Debtors, and shall not revoke any existing agency created by the Plan Administrator pursuant to this Agreement or invalidate any action theretofore taken by the Plan Administrator, and the provisions of this Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Plan Administrator.

1.7     Acceptance by Plan Administrator. The Plan Administrator hereby accepts the obligations imposed upon him by this Agreement and agrees to observe and perform such obligations on and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order.  In connection with and in furtherance of the purposes of the Plan, the Plan Administrator hereby accepts the transfer of the Retained Claims and Causes of Action and the Plan Administrator Expense Reserve to the Post-Effective Date Debtors.

## ARTICLE II
## PROSECUTION AND RESOLUTION OF
## RETAINED CLAIMS AND CAUSES OF ACTION

2.1     The Plan Administrator's Exclusive Authority to Pursue, Settle, or Abandon Retained Claims and Causes of Action. Subject to the provisions of the Plan, specifically including section 7.10, the Plan Administrator shall have exclusive rights, powers, and interests of the Estates to pursue, settle, or abandon all Retained Claims and Causes of Action not otherwise released pursuant to the Plan as the sole representative of the Estates pursuant to Bankruptcy Code Section 1123(b)(3).

## ARTICLE III
## LIABILITY OF THE PLAN ADMINISTRATOR

3.1     Liability; Indemnification. The Plan Administrator shall have no liability whatsoever to the Debtors or holders of Claims against or Interests in the Debtors for any acts or omissions in his capacity as the Plan Administrator other than for fraud, gross negligence, or willful misconduct. The Debtors shall jointly indemnify the Plan Administrator and his (as applicable) employees, agents, attorneys, and independent contractors (collectively, the "***Indemnified Persons***") from and against any and all pending or threatened claims, demands, suits, investigations, proceedings, judgments, awards, liabilities, losses, damages, fees, and expenses paid or incurred by an Indemnified Person in connection with, arising out of, or related to (whether from direct claims or third-party claims) this Agreement (including any Indemnified Person's reasonable counsel fees and expenses). The foregoing indemnification obligations shall not apply to a claim against an Indemnified Person in the event that a Final Order of a court of competent jurisdiction finally determines that such claim resulted from the gross negligence, willful misconduct, or fraudulent acts of that Indemnified Person.

3.2     Exculpation. The Plan Administrator, all professionals retained by the Plan Administrator, and representatives of each of the foregoing shall be deemed exculpated, except for fraud, willful misconduct, or gross negligence, in all respects by the Debtors. Upon the resignation, death, incapacity, removal, or replacement of the Plan Administrator, the Debtors shall enter into a substantially similar agreement with the successor Plan Administrator that will govern such successor Plan Administrator's obligations under this Article III.

3.3     Reliance by Plan Administrator. To the fullest extent permitted by applicable law, the Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if he relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of e-mails or facsimiles, to have been sent or the Plan Administrator reasonably believes to have been sent by the proper party or parties, and may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein. To the fullest extent permitted by applicable law, the Plan Administrator may consult with counsel, accountants, financial advisors, and other professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the

Plan Administrator (other than for acts or omissions constituting willful misconduct, bad faith, gross negligence, or fraud by the Plan Administrator as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction).  To the fullest extent permitted by applicable law, the Plan Administrator shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon (other than for acts or omissions constituting willful misconduct, bad faith, gross negligence, or fraud by the Plan Administrator as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction).  To the fullest extent permitted by applicable law, the Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, or any other document executed in connection herewith or therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

3.4     Survival. The provisions of this Article III shall survive the termination of this Agreement and the resignation, removal, or replacement of the Plan Administrator.

## ARTICLE IV
## DISTRIBUTIONS

4.1     Distributions to Holders of Allowed Claims. All payments to be made by the Plan Administrator to Holders of an Allowed Claim shall be made only in accordance with the Plan, the Confirmation Order, and this Agreement.

4.2     Distributions; Withholding. The Plan Administrator shall make distributions on behalf of the Debtors in accordance with the Plan, the Confirmation Order, and this Agreement. Additionally, the Plan Administrator may withhold from amounts distributable to any beneficiary any and all amounts, determined in the Plan Administrator's sole discretion, upon the advice of counsel, to be required by applicable law, regulation, rule, ruling, directive, or other governmental requirement.  The actual and reasonable costs of making such distributions shall be paid from the Plan Administrator Expense Reserve.

4.3     No Distribution Pending Allowance.  No payment or distribution shall be made with respect to any Claim to the extent it is Disputed unless and until such Disputed Claim becomes an Allowed Claim or is otherwise approved by the Plan or the Bankruptcy Court.

4.4     Non-Cash Property. Any non-Cash property of the Debtors, including accounts receivable, may be sold, transferred, liquidated, or abandoned by the Plan Administrator on behalf of the Debtors.  If, in the Plan Administrator's reasonable judgment, such property cannot be sold or liquidated in a commercially reasonable manner, or the Plan Administrator believes, in good faith, that such property has no value, the Plan Administrator shall have the right to abandon or otherwise dispose of such property on behalf of the Debtors.  No party in interest shall have a cause of action against the Plan Administrator or any employee, consultant, agent, or professional of the Plan Administrator arising from or related to the disposition of non-Cash property in accordance with this Section 4.4.

4.5     Compliance Matters. In connection with the Plan and all distributions thereunder, to the extent applicable, the Plan Administrator on behalf of the Debtors is authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant thereto shall be subject to such withholding and reporting requirements.

4.6     No Distribution in Excess of Allowed Amount of Claim. Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of its Claim any distribution in excess of the Allowed amount of such Claim.

## ARTICLE V
## TAXES

5.1     Withholding of Taxes and Reporting Related to Post-Effective Date Debtor Operations. The Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the Plan Administrator shall be subject to any such withholding and reporting requirements. To the extent that the liquidation of the Retained Claims and Causes of Action or any other actions taken by the Plan Administrator pursuant to the Plan creates a tax liability, the Plan Administrator shall promptly pay such tax liability out of the Plan Administrator Expense Reserve Amount (or the income or proceeds thereof) and any such payment shall be considered a cost and expense of the operation of the Post-Effective Date Debtors payable without Bankruptcy Court Order. The Plan Administrator may reserve a sum, the amount of which shall be determined by the Plan Administrator, sufficient to pay the accrued or potential tax liability. The Plan Administrator may enter into agreements with taxing authorities or other governmental units for the payment of such amounts as may be withheld. Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All beneficiaries shall be required to provide any information necessary to effect the withholding of such taxes.

## ARTICLE VI
## DISSOLUTION OF THE DEBTORS

6.1     Events Upon Termination. Upon the dissolution of the Debtors, the Plan Administrator shall distribute any remaining assets or Cash, if any, to the applicable beneficiaries, in accordance with the Plan, the Confirmation Order, and this Agreement.

6.2     Winding Up, Discharge, and Release of the Plan Administrator. For the purposes of winding up the affairs of the Debtors, the Plan Administrator shall continue to act as Plan Administrator until his duties under this Agreement have been fully discharged or his role as Plan Administrator is otherwise terminated under this Agreement and the Plan. Upon a motion or notice by the Plan Administrator, the Bankruptcy Court may enter an Order relieving the Plan Administrator, its agents and employees of any further duties, discharging and releasing the Plan Administrator.

# ARTICLE VII
# **<u>MISCELLANEOUS PROVISIONS</u>**

7.1 Amendments. The Plan Administrator may modify, supplement, or amend this Agreement solely to clarify any ambiguity or inconsistency, or render this Agreement in compliance with its stated purposes, in a manner consistent with the Plan or the Confirmation Order. Any such amendment shall be promptly filed with the Bankruptcy Court.

7.2 Waiver. No failure by the Plan Administrator to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

7.3 Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

7.4 No Bond Required. Notwithstanding any state law to the contrary, the Plan Administrator shall be exempt from giving any bond or other security in any jurisdiction.

7.5 Relationship to the Plan and Confirmation Order. In the event that any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or Confirmation Order shall control. Notwithstanding anything to the contrary in this Agreement, the Plan Administrator and all Holders of Claims and Interests shall be bound by the terms of the Plan and, accordingly, shall not commence any proceeding with respect to any Cause of Action released, enjoined, and/or exculpated pursuant to the Plan.

7.6 Applicable Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

7.7 Dispute Resolution. The Bankruptcy Court shall have exclusive jurisdiction in relation to any claim arising out of or relating to this Agreement. Without the permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Plan Administrator, in his official capacity, with respect to his status, duties, powers, acts, or omissions as Plan Administrator, in any forum other than the Bankruptcy Court. EACH OF THE PARTIES TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT.

7.8 Severability. In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

7.9     Limitation of Benefits. Except as otherwise specifically provided in this Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer on or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.

7.10    Notices. All notices, requests, demands, consents, and other communications hereunder shall be in writing (including e-mail) and shall be deemed to have been duly given to a person, if delivered in person or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, or by facsimile or e-mail, as follows:

<u>If to the Plan Administrator:</u>

Hugh Smith
c/o Lisa McKay
PO Box 163
Plantersville, TX 77363
E-mail: hugh@readisuite.com

With a copy to:

Locke Lord LLP
Attn.: Elizabeth M. Guffy and Simon R. Mayer
600 Travis, Suite 2800
Houston, Texas 77002
E-mail: eguffy@lockelord.com; simon.mayer@lockelord.com

<u>If to the Debtors:</u>
Agilon Energy Holdings II LLC
PO Box 163
Plantersville, Texas 77363

With a copy to:

Locke Lord LLP
Attn.: Elizabeth M. Guffy and Simon R. Mayer
600 Travis, Suite 2800
Houston, Texas 77002
E-mail: eguffy@lockelord.com; simon.mayer@lockelord.com

<u>If to a Holder of a Claim:</u>

In the manner consistent with the notice requirements to Holders of Claims under the Plan.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

7.11  Further Assurances. From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

7.12  Integration. This Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan and in the Confirmation Order.  This Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.

7.13  Interpretation. The enumeration and Article and Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations.  The words herein, hereby, and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular Article or subsection of any Article hereof unless the context requires otherwise.

7.14  Counterparts. This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

| **DEBTORS:** | **PLAN ADMINISTRATOR:** |
|---|---|
| **Agilon Energy Holdings II LLC** | |
| By: _____ <br> Name: Hugh Smith <br> Title: Chief Restructuring Officer | By: _____ <br> Name: Hugh Smith |
| **Victoria City Power LLC** | |
| By: _____ <br> Name: Hugh Smith <br> Title: Chief Restructuring Officer | |
| **Victoria Port Power LLC** | |
| By: _____ <br> Name: Hugh Smith <br> Title: Chief Restructuring Officer | |

**Annex A**
**Compensation**

Fees in connection with the engagement will consist of an hourly fee arrangement of $[____] per hour for the Plan Administrator, exclusive of reasonable and documented out-of-pocket expenses that are incurred on the Plan Administrator's behalf with respect to his services as the Plan Administrator, including counsel fees and expenses, airfare, meals, hotel accommodations, telephone, industry research, duplicating, and printing. Invoices for fees and expenses incurred in connection with services as the Plan Administrator will be billed monthly and are due upon receipt. Fees and expenses for the period from May [__], 2022 through the Effective Date, including in connection with the preparation and negotiation of this Agreement, shall be deemed incurred as of the Effective Date.

The Plan Administrator shall not be required to seek or obtain approval by the Bankruptcy Court of the payment of his compensation or expenses.

The compensation set forth herein is intended to be the baseline compensation for the Plan Administrator. The parties recognize, however, that developments during the Debtors' wind down process may result in unanticipated complications or litigation, or the results achieved may surpass current expectations, such that the Plan Administrator may either be required to devote more time and resources than currently anticipated, or may be deserving of a success fee, and in such instances, the parties anticipate that the Plan Administrator will petition the Bankruptcy Court and receive additional compensation as the Bankruptcy Court deems appropriate on notice and approval.